THOMPSON *v.* ESSEX WIRE COMPANY

1. NEGLIGENCE—OCCUPIER OF LAND—INVITEES—DUTY.

Whoever expressly or impliedly invites others upon his premises assumes the duty of warning all who may accept the invitation of any danger in coming of which he knows or ought to know, but of which the invitees are not aware.

2. NEGLIGENCE—OCCUPIER OF LAND—INVITEES—DUTY.

The occupier of the premises must use care not to injure his invitees by negligent activities, must warn the invitees of the latent defects of which the occupier knows, must inspect the premises to discover possible dangerous conditions of which the occupier does not know, and must take reasonable precautions to protect the invitees from dangers which are foreseeable from the arrangement or use of the land.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 38 Am Jur, Negligence § 96 *et seq.*
[6–8] 53 Am Jur 2d, Master and Servant § 295 *et seq.*
[9–11] 58 Am Jur, Witnesses § 674 *et seq.*
[12–15] 29 Am Jur 2d, Evidence § 836 *et seq.*
[16] 29 Am Jur 2d, Evidence § 774.
[17] 58 Am Jur, Witnesses § 565.

3. NEGLIGENCE—DANGEROUS CONDITION—STANDARD OF CARE.

A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk; although no absolute standard can be set, every reasonable precaution suggested by experience and the known danger ought to be taken.

4. NEGLIGENCE—DEFINITION—DUE CARE.

Negligence is the want of due care under all the circumstances.

5. NEGLIGENCE—INVITEES—CONTRIBUTORY NEGLIGENCE—STANDARD OF CARE.

An invitee need not ordinarily be as vigilant as one of lesser status, because the invitee may justifiably rely upon the landlord or proprietor to provide reasonably safe premises.

6. WITNESSES—OPPOSITE PARTY—FELLOW SERVANTS.

Three witnesses, fellow employees of the plaintiff, were not agents or employees of the plaintiff within the meaning of the opposite party statute where the plaintiff and the witnesses were employees and shareholders of an employee-owned company and the plaintiff was the president of the company (MCLA § 600.2161).

7. MASTER AND SERVANT—COMMON SERVICE—FELLOW SERVANTS.

All persons in the common service of and controlled by a common master are, at least *prima facie,* fellow servants.

8. MASTER AND SERVANT—FELLOW SERVANTS—FOREMAN.

A foreman and those working under him are fellow servants.

9. WITNESSES—OPPOSITE PARTY—DISCRETION.

Allowing cross-examination under the opposite party statute is in the discretion of the trial court (MCLA § 600.2161).

10. WITNESSES—PRIOR STATEMENT—INCONSISTENCY.

A party cannot question his own witness concerning the witness's prior statements where there is no forgetfulness or uncertainty on the part of the witness and where there is no inconsistency between the witness's questioned prior statements and the answers given by him at trial.

11. WITNESSES—HOSTILE WITNESS.

A witness called by the defendant was not a witness hostile to the defendant even though the plaintiff was the witness's foreman where the witness displayed no hostile attitude, unwillingness, or evasiveness, where none of the witness's testimony was equivocal or reluctantly given, and where

the defendant disclosed no manner in which the witness's working under the plaintiff necessitated that the witness be declared hostile.

12. Evidence—Books—Admissibility.

A book or other publication printed by a private person and not shown to be approved by a public authority generally is not competent evidence of the facts stated within it; however, books and other printed publications shown to be in general use among the class of persons interested in the matters which the books contain have been held admissible.

13. Evidence—Books—Accident Prevention—Admissibility.

A book concerning accident prevention in industrial operations, published by the National Safety Council, was inadmissible in a trial in which the plaintiff sought damages for burns from sulfuric acid while he was dismantling a pipeline where no foundation had been laid for the publication's admission.

14. Evidence—Books—Advisory Codes—Admissibility.

Advisory codes which have not been given compulsory force by a legislative body, whether issued by governmental agencies or voluntary safety councils, are generally not admissible into evidence.

15. Evidence—Books—Reversible Error.

Admission of a book concerning accident prevention in industrial operations into evidence in a non-jury trial in which the plaintiff sought damages for sulfuric acid burns suffered while dismantling a pipeline, although error, was not reversible error where there was other competent evidence to support the finding of negligence and where the substantial rights of the parties were not affected by the error.

16. Negligence—Evidence—Change in Condition—Admissibility.

Evidence that the defendant, following an accident in which the plaintiff sustained injuries from sulfuric acid contained in a pipeline, installed flood-type showers within a few feet of the place of the accident and placed tags reading "Danger, Acid" on the pipeline was admissible as bearing on ownership or control where the defendant had contended that the acid supply system, including the pipeline, was owned and maintained by a company other than the defendant.

17. Witnesses—Conclusions—Admissibility.

Asking a plaintiff who was a witness whether he had made a mistake in unscrewing a valve connected to a pipe con-

taining sulfuric acid, which had led to his injury, was improper as calling for a conclusion of the witness where the witness had already stated that he had intended to remove only the pipe from the valve.

Appeal from Kalamazoo, Wade Van Valkenburg, J.   Submitted Division 3 May 7, 1970, at Grand Rapids.   (Docket No. 7,655.)   Decided October 29, 1970.

Complaint by John W. Thompson against Essex Wire Company for damages for injuries from sulfuric acid burns.   Judgment for plaintiff.   Defendant appeals.   Affirmed.

*James Thomas Sloan, Jr.* and *Russel D. Gould* for plaintiff.

*James & Dark* for defendant.

Before:  HOLBROOK, P. J., and BRONSON and MUNRO,* JJ.

HOLBROOK, P. J.   Plaintiff, John W. Thompson, an empoyee and foreman with Kalamazoo Industrial Services, Inc., an independent contractor, brought this action for injuries sustained when he was burned severely about the face and arms while dismantling a pipe, containing concentrated sulfuric acid, during the course of his employment upon the premises of defendant, Essex Wire Company, located in Three Rivers, Michigan.   Plaintiff claimed that the accident and resulting injuries were caused by the negligence of defendant.   Defendant, in its answer, denied any negligence and pleaded, by way of affirmative defense, negligence of plaintiff which

---

* Circuit judge, sitting on the Court of Appeals by assignment.

proximately caused or contributed to the accident. A nonjury trial held in the Kalamazoo County Circuit Court in March 1969, resulted in a judgment for plaintiff for $53,530.11. Defendant appeals.

Kalamazoo Industrial Services, Inc., which provides millwright and machinery installation services, is an employee-owned company of which plaintiff, at the time of the accident, was president. Defendant had hired Kalamazoo Industrial Services, Inc., to install, in its plant, rolling mill equipment for the production of copper wire. At the project was a pickling tank, owned by defendant, which was fabricated and installed in the building by an Indiana company. The tank was designed to hold diluted sulfuric acid, for the purpose of carrying rolls of copper wire through the solution of acid and water. The Indiana company also installed at defendant's plant a sulfuric acid supply system, including an elevated storage tank outside the plant and an acid line running from the storage tank into the building, terminating at the pickling tank. Through that pipeline acid was supplied to the tank. The Indiana company owned the supply system.

Because the pickling tank, as originally installed, was too long for its needs, defendant decided that a section in the middle of the tank would be cut out and the two ends welded together. This operation was started October 28 or 29, 1966, by Kalamazoo Industrial Services, Inc., after the pickling tank had been drained by defendant's employees. A blueprint of the work to be done, provided by defendant, did not include information as to the presence of the acid line.

After the middle portion of the pickling tank had been removed by employees of Kalamazoo Industrial Services, Inc. under plaintiff's supervision, plaintiff determined that, in order to move one end of the

tank so as to join the sections prior to welding, without breaking the line, it would be necessary to dismantle a portion of the line located near the tank. Testimony indicated that plaintiff did not know of his own knowledge, and had not been informed, that the pipe in question was a sulfuric acid line.

Prior to dismantling the pipe plaintiff checked the two valves located on the line, some distance away from the tank, and both were closed. The third valve, nearest the tank, was partially open, but the pipe appeared to be empty. Plaintiff proceeded to close that valve also. He then undertook to remove that portion of the pipe nearest to the tank beyond the third valve. As he took apart the pipe leading into the top of the valve, which he was able to do with one hand, sulfuric acid sprayed out of the area of the valve, striking and injuring plaintiff. A fellow employee rushed plaintiff to defendant's washroom, approximately 125 to 200 feet away, where he was placed under a shower. There was some testimony that a hose was present in the area of the pickling tank, but that, being in pain, plaintiff did not think about it and, instead, was led to the nearest shower. After the incident the piece of pipe which plaintiff was dismantling was found on the floor with the valve nut attached to it, and the ball, which forms the center of the valve, was also lying nearby.

Evidence at the trial revealed that plaintiff, at the time of the accident, was doing the job he was hired to do, which apparently included changing the pipe; that plaintiff, while removing the pipe, was watching to make certain that the pipe would come out of the valve while, at the same time, keeping the valve itself intact; and that plaintiff had not ascertained the precise cause of the accident

other than that the top of the valve apparently came off.

Defendant raises several claims of error which are restated and dealt with in order.

# I

*Did the trial court commit error in determining that defendant was guilty of negligence proximately causing plaintiff's injuries?*

The trial court found that defendant was negligent in the following particulars: (a) in failing to provide plaintiff and his crew with adequate instructions as to the project to be completed; (b) having drained the acid solution from the tank in preparation for the cutting of the tank, defendant's employees failed likewise to drain the acid from the pipe, this failure being the real cause of the accident; (c) in failing to provide a safe place for plaintiff to work, in view of the facts that the acid was not drained from the pipe and that the washroom was approximately 200 feet away from the scene of the accident; (d) in failing to advise plaintiff that the pipe in question contained acid, there being no signs or colors to warn him of this fact or to distinguish the acid pipe from other pipes; (e) in failing to supervise the work as it progressed, defendant having relied upon the judgment of the hired men to do the job; (f) in failing to have a ready spray of water for washing off acid; and (g) in using an improper valve.

(a) Defendant asserts that there is no legal duty to give an independent contractor, who hires himself out as an expert, detailed and continuing instructions as to how to perform the work to be done, citing *Dees* v. *L. F. Largess Company* (1965), 1 Mich App 421. That case, however, dealt with a

situation where, unlike the instant case, the condition causing the injury was clearly reviewed by, and known to, plaintiff prior to commencing work on the project; (b) defendant asserts that, although it did not drain the acid line, the blueprint given plaintiff did not call for the moving of, nor the making of changes in, the line, but that, since plaintiff determined that it was necessary to move the pipe, defendant could assume that plaintiff would exercise reasonable care in so doing; (c) defendant claims that it was under no duty to use reasonable care to make the premises safe for plaintiff because plaintiff was hired to repair the premises, citing *Groleau* v. *Hallenbeck* (1954), 340 Mich 519 and *Royal* v. *McNulty* (1969), 17 Mich App 713. The *Groleau* case, like *Dees, supra,* involved an apparent and obvious condition known to plaintiff. The *Royal* case, unlike the case at hand, concerned the construction of a building and held that where the danger to the subcontractor was caused by scaffolding erected by the subcontractor himself, the general contractor had no right to exercise control, nor did he have a duty of inspection; (d) defendant also contends that, assuming that the acid line was a dangerous condition, there was no evidence that defendant should have realized that it involved any unreasonable risk of harm to the skilled workmen, including plaintiff, who had been in the plant for a number of months; (e) defendant claims that it had no duty to supervise the work of the independent contractor's employees as it progressed and should have been able to rely upon the judgment of the hired men to do the job, citing *Dees, supra,* and *Royal, supra,* both of which are distinguishable on their facts from the instant case; (f) defendant claims that there is no duty to provide for a shower at a point where someone dismantles a pipeline;

and (g) defendant contends that since the pipeline in question was owned and maintained by an Indiana company, it was not the responsibility of defendant to maintain a proper valve connected to it, and that the testimony showed only that with a different valve the accident might not have happened.

Plaintiff counters by asserting, and the record reveals, that competent, credible, and persuasive evidence was produced in support of the trial court's decision.

In 18 Callaghan's Michigan Civil Jurisprudence, Negligence, § 10, pp 215–217, it is stated in part as follows:

"The owner of premises is under a duty to use such care as an ordinarily careful and prudent person uses under the same or similar circumstances to avoid injury to invitees.   *   *   *   While one in lawful control of premises is not an insurer of safety of an invitee, if the proprietor knows or reasonably should know of a dangerous condition on his premises, he may become liable for an injury resulting therefrom, and he may not delegate his responsibility to another, and thus escape liability.[1]

*       *       *

"[W]hoever expressly or impliedly invites others upon his premises assumes the duty of warning all who may accept the invitation of any danger in coming, of which he knows or ought to know, but of which they are not aware."

In *Powers* v. *Huizing* (1968), 9 Mich App 437, cited by plaintiff, and relied upon by the trial court in its decision, it is stated at pp 441, 442:

[1] See *Bradley* v. *Burdick Hotel Co.* (1943), 306 Mich 600, 604: "Nor is it necessary for the injured person to prove the immediate and precise cause of the accident where the proprietor of the premises has actual or constructive knowledge of the dangerous condition."

" '[T]he obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use.' "

In *Young* v. *Lee* (1944), 310 Mich 42, 47, the principle applicable here is stated as follows:

" 'A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk. No absolute standard can be fixed by law, but every reasonable precaution suggested by experience and the known danger ought to be taken.' "

See, also, *St. Paul Fire & Marine Insurance Company* v. *Michigan Consolidated Gas Company* (1966), 4 Mich App 56, 63; *McCord* v. *United States Gypsum Company* (1966), 5 Mich App 126, 130; *Vannoy* v. *City of Warren* (1968), 15 Mich App 158, 163, 164.

Negligence is the want of due care under all the circumstances. *Holgate* v. *Chrysler Corp.* (1937), 279 Mich 24. The credibility of the witnesses is left to the judge where he sits without a jury and his findings of fact will not be set aside unless clearly erroneous. *Kirilloff* v. *Glinisty* (1965), 375 Mich 586, 592; *Powers* v. *Huizing, supra;* GCR 1963, 517.1, as amended 1969. We find no error.

## II

*Was plaintiff guilty of contributory negligence proximately causing his injury?*

Defendant contends that plaintiff was contributorily negligent in not ascertaining the contents of the acid pipe before dismantling the same; in not bleeding or draining the line before dismantling it, or checking to determine whether it had been so drained; and in carelessly dismantling the valve on the line. In addition, defendant claims that plaintiff was not told to dismantle the pipe.

Plaintiff asserts that he was doing the job he was hired to do, which included the moving of the line; that the line looked like any other iron pipe; that defendant did not inform plaintiff of the acid contents of the line, nor of the fact that the pipe had not been drained as had the pickling tank; and that plaintiff closed the valves on the line before proceeding to dismantle it. Plaintiff maintains that these facts were sufficient to support the trial court's determination that he was not contributorily negligent.

Defendant's chief engineer, Ralph Vogel, in charge of the engineering aspect of the rolling mill project, testified in part in his deposition, which was read into evidence, as follows:

" 'Q. Now, with reference to the work that Thompson was doing, I believe it was your statement to me that he was doing the job he was hired to do, the cutting of the tank and changing of the pipe, is that correct?

" 'A. Is that the statement I made to you?

" 'Q. Yes, sir.

" 'A. That is correct, he was doing what he was supposed to be doing.

" 'Q. And that included the changing of the pipe?

" 'A. Apparently so.' "

The trial court, in its opinion, stated in part:

"Now, let us turn our attention to the actions of the plaintiff. The defendant argues with considerable vigor that the accident was caused by his negligence. An examination of his actions in removing the pipe becomes rather vital. Lyle Foote, one of the co-workers, testified that he opened the valve and removed the short pipe running into the interior of the tank. Then he left to find a pipe wrench and the accident occurred a short time thereafter. The plaintiff testified that he removed the horizontal pipe, a nipple, and then began to unscrew the pipe above the valve. For some unexplained reason, the collar turned with the pipe and both came off. Naturally, this allowed the ball in the valve to pop out with the acid.

"Further, the plaintiff testified that he checked all three valves in order to make sure that they were closed. No liquid came out when he removed the nipple. Therefore, it would be perfectly logical for him to remove the next pipe and whether he noticed the turning collar or not is a question. As a millwright, he knew something about valves but could not know that the vital part thereof was a hollow ball. Certainly if he had have known the facts concerning the makeup of the valve, he would have turned the pipe with his right hand and held the collar in place with the left.

"Did he act as a reasonable prudent man in like circumstances? This was late in the day. The tank could not be moved without the pipe being dismantled. His only thought was to get the obstruction out of the way and proceed with the project. Had he been advised of all the facts or received instructions, the accident would not have happened. Therefore, it is the conclusion of this court that he acted as a reasonable prudent man would do, especially in view of the fact that the defendant failed to have the contents drained from the pipe and consequently failed to provide a safe place in which to work."

In 18 Callaghan's Michigan Civil Jurisprudence, Negligence, § 39, it is stated at pp 284, 285:

"So if contributory negligence appears, his [the one going on the property of another] status on the premises becomes immaterial except insofar as defendant's duty toward him may vary with his status and therefore may affect the vigilance required, since an invitee need not ordinarily be as vigilant as one of lesser status, for he may justifiably rely upon the landlord or proprietor to provide reasonably safe premises."

See, also, *Spear* v. *Wineman* (1952), 335 Mich 287.

The question of contributory negligence is for the determiner of the facts, and the trial court's finding will not be set aside by this Court unless clearly erroneous. A thorough review of the record before us convinces us that the trial court's determination was not clearly erroneous. *Denby* v. *Sheridan* (1966), 3 Mich App 641, 644. GCR 1963, 517.1, as amended 1969.

## III

*Did the trial court commit error in not allowing the defendant to call three employees of Kalamazoo Industrial Services, Inc., as agents or employees of the opposite party pursuant to MCLA § 600.2161 (Stat Ann 1962 Rev § 27A.2161)?*

The statute in question, MCLA § 600.2161 (Stat Ann 1962 Rev § 27A.2161) states:

"In any suit or proceeding in any court in this state, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he

were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

It is defendant's contention that it was erroneously denied the benefits of the foregoing statute, and that such denial prejudicially restricted defendant's examination of three employees of Kalamazoo Industrial Services, Inc. In support of this contention, defendant asserts that plaintiff was, at the time of the accident, president of Kalamazoo Industrial Services, Inc., a stockholder in the company, and foreman over the three men on the work at defendant's plant; that the three men were employees of Kalamazoo Industrial Services, Inc., and agents of plaintiff; and that Kalamazoo Industrial Services, Inc., as employer of the three men who were working under plaintiff's direction at the time of the accident, was an opposite party and a real party in interest, even though not specifically designated, under the subrogation provisions of the Michigan workmen's compensation act.[2]

Plaintiff asserts, and the testimony reveals, that plaintiff, at the time of the accident, owned 100 shares of the 1921 shares of stock in the employee-owned company; that he was president of the company in name only, one day per month, for the purpose of board meetings only, having nothing to do with the management of the company; and that all employees owned an equal amount of stock in the company.

The cases cited by defendant are distinguishable from, and not controlling of, the instant case.

---

[2] MCLA § 418.827(5) (Stat Ann 1970 Cum Supp § 17.237[827] [5]).

In 56 CJS, Master and Servant, § 327, pp 1085, 1086, it is stated:

"It has frequently been stated that all serving a common master working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow servants. More briefly, it is sometimes stated that all persons are, at least *prima facie,* fellow servants who are in the common service of, and controlled by, a common master."

See, also, 35 Am Jur, Master and Servant, § 372, p 797, where it is stated that "[m]any courts [regard] a foreman and those working under him as fellow servants".

The record does not disclose that, at the time of the accident in question, the three witnesses, attempted to be called by defendant under the statute, were anything more than fellow servants with the plaintiff, all of whom were serving a common master, Kalamazoo Industrial Services, Inc., not a party to this case. The statute is not applicable if no agency or master-servant relationship in the ordinary sense exist. See 5 Callaghan's Michigan Pleading & Practice (2d ed), § 37.191, pp 544, 545; *Thelen* v. *Mutual Benefit Health & Accident Ass'n.* (1942), 304 Mich 17. The propriety of allowing cross-examination under the statute should be left to the discretion of the trial court. *New York Central Railroad Company* v. *Michigan Milk Producers Association* (1966), 3 Mich App 648, 653.

Defendant cites no authority in support of its position that Kalamazoo Industrial Services, Inc., employer of plaintiff, was an opposite party under the statute by virtue of subrogation rights under the workmen's compensation act. This contention is without merit.

IV

*Did the trial court commit error in refusing to permit defendant's attorney to refresh the recollection of a witness called by defendant, who was an employee of Kalamazoo Industrial Services, Inc.?*

Defendant claims that the trial court committed error in refusing to permit counsel to use a prior statement made to plaintiff's attorney by Alex Sussex, an employee of Kalamazoo Industrial Services, Inc., called as a witness by defendant, to refresh his recollection, and to use his discovery deposition for the same purpose, after the witness had acknowledged both the statement and the deposition.

Plaintiff counters by asserting, in effect, that there was no inconsistency between the testimony of the witness at the trial and the prior statements of the witness which were attempted to be introduced by defendant. Plaintiff maintains that the attempted refreshing of recollection was in fact an attempt at impeachment by defendant of its own witness.

The following occurred during direct examination of witness Sussex by defendant:

"*Q.* You did not know it was an acid line before this accident happened?

"*A.* No, I didn't.

"*Q.* Do you recall making a statement to Mr. Sloan at his office over here in the Hanselman Building in July, on July 24th of 1968?

"*A.* Yes.

"*Q.* For the purpose of refreshing your recollection, sir—

"*Mr. Sloan:* I don't think refreshing his recollection is necessary. He says he has a memory, that he didn't know that was an acid line before the accident. If he had said he didn't remember it

would be something different, but no recollection can be refreshed, your Honor, if this man makes a definite statement that he didn't know this was an acid line. This is an attempt to impeach the witness and this is his witness."

In *Haynes* v. *Seiler* (1969), 16 Mich App 98, cited by defendant, it is stated in part at pp 100, 101:

"Michigan law prohibits impeachment of a party's witnesses by prior inconsistent statements. *Higdon* v. *Kelley* (1954), 339 Mich 209; *Thelen* v. *Mutual Benefit Health & Accident Ass'n* (1942), 304 Mich 17; *Farthing* v. *Hepinstall* (1928), 243 Mich 380. However, the *Higdon* decision included the following language:

" 'This Court has held that prior statements may not be used when the sole purpose in their use is to impeach the credibility of a party's own witness. See *Farthing* v. *Hepinstall* (1928), 243 Mich 380. But when the purpose of referring to the prior statement is to refresh the memory of a witness or to induce the witness to explain an apparent inconsistency, the prior statement may be referred to during direct examination.' (p 219) From other included language, the *Higdon* decision established the principle that on direct examination, a party may refer to a witness's prior statement either to refresh the witness's memory or to induce an explanation of an apparent inconsistency, *if the witness acknowledges the prior statement.* (Emphasis supplied.)"

See, also, *Cohen* v. *McGregor* (1968), 13 Mich App 519.

In 24 Michigan Law & Practice, Witnesses, § 98, pp 94, 95, we find the following stated:

"A witness who does not recollect or is not certain about matters concerning which he is called on to testify may be permitted to refresh his memory. The refreshing of a witness' memory is a matter

resting largely in the discretion of the trial court, and it is in the discretion of the court to permit counsel so to frame his questions as to refresh the memory of the witness, as by directing his attention to facts which may enable him to recollect the fact sought to be proved.    *    *    *

"The memory of an unwilling, reluctant, and forgetful witness may be refreshed, and when a party is taken by surprise by the evidence of his witness, such witness may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection.

"The matter of whether prior statements made by a witness can be used by the party calling the witness for the purpose of refreshing his recollection rests largely in the discretion of the trial court."

In the instant case there was no forgetfulness or uncertainty on the part of witness Sussex so as to necessitate that his memory be refreshed, nor does any inconsistency appear between his prior statements concerning which defense counsel attempted to question the witness, and answers given by him at the trial. The trial court under the facts in this case did not abuse its discretion in refusing to permit defense counsel to question the witness concerning his prior statements.

## V

*Did the trial court commit error in refusing to declare witness Sussex a hostile witness?*

After the trial court had refused to allow defense counsel to question witness Sussex by the use of prior statements, counsel requested that the court declare the witness a hostile witness. Defendant contends that, while it is discretionary with the trial court whether or not a witness should be declared hostile, such discretion was abused in the

instant case. In support of this claim defendant asserts that the witness had made prior inconsistent statements; and that, at the time of trial, he was working under plaintiff, as he did for a number of years both before and after the incident.

We have heretofore ruled that the prior statements of witness Sussex were not inconsistent with testimony given by him at the trial. Additionally, defendant discloses no manner in which the fact that witness Sussex worked under plaintiff necessitated that he be declared a hostile witness. Witness Sussex, upon examination, displayed no hostile attitude, unwillingness, or evasiveness, nor did any of his testimony appear to be equivocal or reluctantly given. *Bales* v. *Evans* (1914), 182 Mich 383, 390. The court did not abuse its discretion in refusing to declare the witness to be hostile. *Bresch* v. *Wolf* (1928), 243 Mich 638; *Cohen* v. *McGregor, supra*.

## VI

*Did the trial court commit error in admitting into evidence, upon offer made by plaintiff, a book published by the National Safety Council?*

Plaintiff's exhibit 23, admitted into evidence over defendant's objection, was a book entitled *Accident Prevention Manual For Industrial Operations,* published by the National Safety Council. Defendant claims that prejudicial error resulted from the admission of this manual in evidence without the benefit of an expert to vouch for it; that its admission amounts to effectively putting into evidence certain safety measures, as determined by the writer, without giving the opposite party an opportunity for cross-examination as to whether such practices suggested therein are customary or merely optimum precautions; and that the exhibit is, at best, the un-

sworn declarations of various people made out of court and of no greater force than the unsworn declarations of others, and no more admissible in evidence.

Plaintiff maintains that the entire manual rather than excerpts therefrom was introduced into evidence at defendant's request; and that the pertinent portions of the manual, dealing with identification of piping and hazardous materials were, in fact, cumulative evidence inasmuch as there already had been voluminous testimony elicited upon the trial as to standards adhered to in defendant's industry.

In 32 CJS, Evidence, § 717, it is stated in part at pp 1021, 1022:

"As a general rule a book or other publication printed by a private person and not shown to be approved by any public authority is not competent evidence of the facts therein stated, at least if it does not appear to be in general use among the class of persons interested in the matters of which it treats, and if on account of the recent occurrence of the facts or for other reasons they may be proved by living witnesses or other better evidence. So, advisory codes which have not been given compulsory force by a legislative body, whether issued by governmental agencies or voluntary safety councils, are not admissible in evidence. Books and other printed publications shown to be in general use among the class of persons interested in the matters which they contain have, however, been held admissible."

No foundation was laid for admission of the publication into evidence, and its admission was error. This determination does not, however, require a reversal of the decision of the trial court, as set forth in 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 227:

"Sub-rule 529.1 provides that no error in either the admission or exclusion of evidence is ground for granting a new trial or upsetting a verdict, judgment, or order, unless refusal to take such action would be inconsistent with substantial justice. Undoubtedly this matter was singled out for express mention, within the otherwise general language of the rule, because claimed errors in the admission or exclusion of evidence have always been heavily used in support of attempts to upset verdicts and judgments by dissatisfied suitors.

"In non-jury cases the admission of incompetent evidence is usually harmless, since the error is readily corrected by disregarding the inadmissible evidence, and the findings of the court will stand so long as there was competent evidence to sustain them."

In this case there was competent evidence, without relying upon the improperly admitted manual, to support the trial court's determination of negligence on the part of defendant. The substantial rights of the parties were not affected by the error. *Borost* v. *Doyle* (1968), 9 Mich App 478.

## VII

*Did the trial court commit error in allowing evidence, over defendant's objection, concerning the installation after the accident, of water showers near the accident scene and signs on the acid line?*

Defendant contends that admission into evidence of changes in conditions in its plant after the accident, *i.e.*, the installation of flood-type showers within a few feet of the accident scene and the placing of tags on the acid line with the words "Danger, Acid", was erroneous and prejudicial. Defendant relies upon the general rule that evidence of subsequent precautions is not admissible, and contends

that the trial court's admission of the evidence was based upon a claimed exception to the rule which had no bearing on this case, *i.e.,* as evidence of defendant's ownership or control of the premises, inasmuch as no controversy existed as to the fact that defendant owned the premises and the acid line was owned by an Indiana company.

Plaintiff claims that this issue is moot by virtue of the trial court's ruling, properly made, that any evidence as to what was done after the accident would be irrelevant in any decision as to negligence or lack of negligence as of the time of the accident.

The trial court, in admitting the evidence complained of, stated that such admission was allowable as evidence of defendant's ownership and control of the premises or his duty to repair, citing McCormick, Evidence, § 252, p 544. It is noted that defendant, in effect, contends on appeal, as it did upon the trial, that because the acid supply system including the pipeline and valves was installed, owned and maintained by a company other than defendant, no responsibility for injuries resulting from it may be placed upon defendant. Defendant having raised the question of control, the court's consideration of the evidence upon that question was not equivalent to a consideration by the court of the evidence as being a confession by defendant of negligence. Its admission was not erroneous. *Judis* v. *Borg-Warner Corporation* (1954), 339 Mich 313, 325.

## VIII

*Did the trial court commit error in sustaining the objection to defendant's question to plaintiff as to whether, in dismantling the pipe, he made a mistake?*

The following occurred during cross-examination of plaintiff by defendant:

"*Q.* Now, Mr. Thompson, if you actually were intending to unscrew the pipe out of the valve but you unscrewed the valve apart, you made a mistake, didn't you?

\* \* \*

"*Mr. Sloan:* Your Honor, that calls for a conclusion. That may be the court's conclusion. I don't think it is his. I object to that question as being irrelevant.

\* \* \*

"*The Court:* I'll sustain the objection. That does call for a conclusion, if he unscrewed the valve and made a mistake. I presume that's for my conclusion."

Defendant contends that the question posed to plaintiff asked for an opinion as to his intentions, *i.e.,* whether he had any intention of unscrewing the valve apart and, if he did unscrew the valve, whether it was other than he intended to do; and that the sustaining of plaintiff's objection to this question was erroneous and prejudicial, in view of the court's finding that the collar of the valve turned with the pipe and, for some unexplained reason, both came off.

As plaintiff asserts, and the trial court held, the question, as phrased, improperly called for a conclusion of the witness. See 4 Callaghan's Michigan Pleading & Practice (2d ed), § 36.405, p 483, and cases cited therein. As plaintiff points out, he had previously testified that he intended to remove the pipe from the top of the valve and believed that the nut had remained on the valve rather than coming off with the pipe. In view of that testimony it is apparent that the purpose of the question was that of eliciting an opinion of the witness as to liability.

The court did not commit error in ruling that the question was improper.

Affirmed. Costs to plaintiff.

All concurred.