John TILLMAN, Plaintiff,

v.

GREAT LAKES STEEL CORPORATION, Defendant.

Civil Action No. 97–40110.

United States District Court, E.D. Michigan, Southern Division.

Aug. 7, 1998.

Barry P. Waldman, Sachs, Waldman, Detroit, MI, for Plaintiff.

Richard A. Kudla, Richard A. Kudla Assoc., Southfield, MI, Dennis G. Bonucchi, Gerald E. Szpotek, Clark Hill, Birmingham, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(c)

GADOLA, District Judge.

Before the court is a motion for summary judgment filed by defendant, Great Lakes Steel Corporation. For the reasons set forth below, this court will grant defendant's motion in part, and deny it in part.

### Factual Background

On October 27, 1996, plaintiff, John Tillman was working on the defendant's premises as a millwright. At that time, plaintiff was employed by Monarch Welding, an independent contractor hired by defendant to make certain repairs in an area of its facility. The plant was apparently still operating during the period in which Monarch was performing repairs.

The area in which the repairs were being made contained a walkway along which were located several steel gates. At some point, the gates were tied open with yellow plastic "caution" tape. Exactly when the gates were tied back, and who tied them back, are issues that are hotly contested. Immediately prior to the time of the accident complained of in this case, one of plaintiff's Monarch co-employees was welding in an area near one of the gates. Apparently, sparks from the welding machine ignited the tape, the tape caught fire and broke free from the gate and the gate swung shut. Plaintiff's hand happened to be placed where the gate met the frame, so the gate closed upon plaintiff's wrist and his wrist was injured by the impact.

Plaintiff filed a complaint in Wayne County Circuit Court on March 25, 1997, asserting claims for negligence. Defendant removed the action to this court on April 22, 1997. Defendant filed the instant motion for summary judgment on March 27, 1998.

### Discussion

**1. Motion for summary judgment pursuant to Rule 56**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden

of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi*

*Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991).

**2. Analysis**

 Defendant asserts that the key question in this case is whether defendant retained **possession and control** of the portion of the plant in which Monarch was making repairs. As the Michigan Supreme Court noted in *Merritt v. Nickelson,* 407 Mich. 544, 552, 287 N.W.2d 178 (1980), "[p]remises liability is conditioned upon the presence of both possession and control over the land." The *Merritt* court went on to note that "[o]wnership alone is not dispositive. Possession and control are certainly incidents of title ownership, but these possessory rights can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Id.* at 552–53, 287 N.W.2d 178. *See also Orel v. Uni–Rak Sales Co.,* 454 Mich. 564, 568–69, 563 N.W.2d 241 (1997). Defendant also relies heavily on *Samodai v. Chrysler Corp.,* 178 Mich.App. 252, 443 N.W.2d 391 (1988), in which the court noted that, "[a]s a general rule, an owner of property is not liable to an employee of an independent contractor for negligence. In such situations, the actual employer of a worker is immediately responsible for job safety and for maintaining a safe work place." *Id.* at 255, 443 N.W.2d 391 (citing *Funk v. General Motors Corp.,* 392 Mich. 91, 101–02, 220 N.W.2d 641 (1974)). The *Samodai* court went on to note that one exception to this general rule provides for liability where "the property owner retains control over the work done and the contractor's activities ...." *Id.* (citing *Bosak v. Hutchinson,* 422 Mich. 712, 724, 375 N.W.2d 333 (1985)).

 In assessing what constitutes the requisite level of control sufficient to impose liability, the Michigan Supreme Court has adopted 2 Restatement 2d of Torts, § 414. *See Plummer v. Bechtel Constr. Co.,* 440 Mich. 646, 660, 489 N.W.2d 66 (1992). Comment (c) to § 414 provides:

> [in order for liability to be imposed,] the employer must have retained at least some degree of control over the manner in which

the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

In *Signs v. Detroit Edison Co.,* 93 Mich.App. 626, 287 N.W.2d 292 (1979), the court found that a general contractor had retained "possession and control" of a building site pursuant to § 414 so that it was liable for an injury suffered by an employee of a subcontractor. The court relied heavily on the fact that the general contractor had "placed an inspector at the site, part of whose function was to protect the safety and integrity of the electric and gas installations [on the site]." *Id.* at 642, 287 N.W.2d 292. Similarly, in *Plummer,* the court found that a jury could properly infer that a property owner had retained sufficient control over a contractor when the owner placed a "site safety and insurance coordinator" on the site to "observe and report concerning the basic safety operation throughout the project and to assure that the safety provisions of the project contract were performed." *Plummer,* 440 Mich. at 661, 489 N.W.2d 66. The *Plummer* court, citing Comment (c) to § 414, drew the distinction between suggestions of the owner/general contractor that "need not necessarily be followed" by the subcontractor and those suggestions that must be followed. The court found that the daily deployment of a safety coordinator on the site, combined with the ability to hire or terminate subcontractors could have led a jury to infer that the subcontractor in *Plummer* was not necessarily free to perform the work of the contract in any way it saw fit. Accordingly, the court found that the owner/general contractor in that case had retained sufficient "control" over the operations to subject it to liability. *See also Miller v. Great Lakes Steel Corp.,* 112 Mich.App. 122, 127, 315 N.W.2d 558

(1982)(holding that an "owner must retain the right to partially control and direct the actual construction work" to be subject to premises liability).

In this case, there is no dispute that defendant owns the property upon which plaintiff sustained his injuries. However, defendant contends that it relinquished possession and control of the area in which plaintiff was working to plaintiff's employer, Monarch Welding. Defendant asserts that it ceased all operations in the area being repaired by Monarch Welding. Moreover, defendant claims that any inspections that were conducted by its employees were to ensure that the work was progressing in a timely manner and in accordance with contract specifications. Defendant argues that at no time did it impose or intend to impose any directives related to the manner in which the work was being performed. Accordingly, defendant contends that it cannot be subject to liability for plaintiff's injuries in this case.

At the outset, this court notes that plaintiff has not come forth with any substantial evidence that defendant retained any control over the manner in which Monarch performed the work it was hired to perform. Plaintiff does assert that certain employees of defendant would enter the area at times to answer questions and direct where certain materials should be placed. In its latest supplemental pleading, plaintiff cites voluminous deposition testimony in which various representatives of defendant admit that they were able to walk through the area in which plaintiff suffered his injury. Specifically, Don Adams, defendant's project engineer, testified that he walked through the area on a daily basis because he was responsible "for the timing and for the cost of it . . . ." (Dep. of Don Adams at 35.) However, the mere fact that defendant's employees were not physically restricted from entering that area of the plant combined with the fact that defendant's employees performed routine inspections to ensure that the project was progressing according to the specifications in the contract will not, without more, subject defendant to liability in this case.

As noted above, the *Signs* court found that a general contractor was liable for the inju-

ries sustained by an employee of one of its subcontractors where the general contractor had placed a safety inspector on the site. However, the *Signs* court specifically distinguished the facts in that case from a case in which a general contractor/owner is "not involved in supervision of [the subcontractor's] employees but [is] concerned only with checking the construction for compliance with the blueprints and specifications." *Signs*, 93 Mich.App. at 641–42, 287 N.W.2d 292. The court held that, "[b]y itself, this limited type of inspection is usually not sufficient 'control' to [subject an owner/general contractor to liability]." *Signs*, 93 Mich.App. at 641–42, 287 N.W.2d 292. Here, the limited supervision cited by plaintiff is insufficient to subject defendant to liability. *See also Miller*, 112 Mich.App. at 127, 315 N.W.2d 558 (holding that "mere contractual control, safety inspections, and general oversight" are insufficient to subject an owner to liability).

■ Plaintiff also relies on three provisions of the contract between defendant and Monarch Welding in an attempt to establish that defendant retained possession of and control over the premises. First, plaintiff cites ¶ 18.2, which provides, in relevant part:

¶ 18.2 *Failure to Maintain SITE.* In the event [defendant] reasonably determines that [Monarch] has failed to maintain the SITE in a safe and sanitary condition, [defendant] may take all necessary steps to do so, including the employment of another contractor, and charge [Monarch] for the cost and expense thereof, which charge may be offset against any amounts due [Monarch] from [defendant] under the CONTRACT.

Plaintiff asserts that the ability to terminate Monarch due to Monarch's failure to maintain the site in a safe condition constitutes control over safety to the degree that ought to subject defendant to liability under § 414. However, ¶ 18.2 of the contract seems to indicate merely a "general right to order the work stopped." Pursuant to Comment (c) of § 414, this alone will not subject defendant to liability in this case. *See also Samodai v. Chrysler Corp.*, 178 Mich.App. 252, 256, 443 N.W.2d 391 (1989)(citing *Erickson v. Pure Oil Corp.*, 72 Mich.App. 330, 339, 249 N.W.2d

411 (1976)) (holding that "contractual provisions subjecting the contractor to the contractee's oversight are not enough to retain effective control").

■ Second, plaintiff cites to ¶ 8.2, which provides:

*Use of SITE by Others.* The SITE and approach facilities are to be used by [Monarch] with due regard for the requirements of [defendant] and others permitted by [defendant] to use same. If it becomes necessary to move the materials or facilities of [Monarch], it shall be done upon request of [defendant] at the expense of [Monarch] unless the request involves a movement from a previously approved area. [Defendant] may install and operate equipment and machinery or otherwise use and occupy the SITE during the progress of the WORK, provided that [defendant] does not unreasonably interfere with the prosecution of the WORK under conditions originally contemplated, or with the proper setting or hardening of WORK in place.

■ Finally, plaintiff cites to ¶ 16.1, which provides:

*Coordination with Other Work.* [Defendant] represents that it and other CONTRACTORS may be working at the SITE during the performance of the CONTRACT. [Defendant] reserves the right to direct [Monarch] to schedule the order of performance of the WORK in such manner as not unreasonably to interfere with the performance of other work by [Defendant] and other contractors.

Plaintiff relies on ¶ 8.2 and ¶ 16.1 to refute defendant's contention that defendant "vacated" the area occupied by Monarch as well as defendant's contention that it did not retain any control over Monarch with respect to the work performed at the site. Plaintiff's reliance on these contractual provisions is misplaced. The language of the two provisions specifically indicates that the degree of control reserved by defendant is insufficient to establish liability in this case. Paragraph 8.2 does not give defendant the authority to supervise employees of Monarch, and in fact that provision prohibits defendant from unreasonably interfering with the progress of

the work. Paragraph 16.1 merely reserves defendant's right to direct *when* certain work will be performed, and it does not reserve any right to impose any substantive requirement related to *how* the work is performed. The rights reserved in Paragraphs 8.2 and 16.1 do not rise to a level that would subject defendant to liability under *Signs* and *Plummer*.

This court also notes that the Michigan Court of Appeals has rejected an argument based on similar contractual provisions in a case involving this defendant and another of its contractors. *See Miller,* 112 Mich.App. at 126, 315 N.W.2d 558. In *Miller,* as in the instant case, the court was faced with a negligence claim against Great Lakes Steel that was brought by an employee of a contractor of Great Lakes Steel who had been injured while on the job at a facility owned by Great Lakes Steel. The employee plaintiff based his claim against Great Lakes Steel in part on various provisions of the agreement between Great Lakes Steel and the contractor. In disposing of plaintiff's claim on that basis, the court held:

> The contract provisions basically provided that Great Lakes would have the right to inspect the site and make safety investigations, to reject subcontractors chosen by [the contractor], to make changes in specifications and design, and to take over the completion of the work if there was a failure on the part of [the contractor] to perform. The evidence does not indicate that Great Lakes retained the right to exercise any substantive control over how [the contractor] performed its work. This Court finds that on the basis of this evidence the directed verdict was properly granted in Great Lakes' favor.

*Id.* The contractual provisions cited by plaintiff in this case are essentially equivalent to those contained in *Miller.* Accordingly, those contractual provisions do not form the basis of a valid claim that defendant retained a sufficient amount of control over the work being performed to subject it to liability for plaintiff's injury in this case.

Therefore, defendant is entitled to summary judgment on plaintiff's claims to the extent that plaintiff's claims rest on the theory that defendant will be liable because it retained sufficient control over the premises or the work being performed on the premises.

However, this court rejects defendant's argument that it cannot be subject to liability in the absence of possession and control of the premises. This court finds that plaintiff's claims remain viable on an alternative theory. Specifically, plaintiff has offered deposition testimony from which a reasonable jury could infer that defendant was directly responsible for negligently securing the gate in an open position with the use of the "caution" tape. In his May 15, 1998 deposition, plaintiff testified that he was a member of the first crew of Monarch employees to arrive on the job site at defendant's facility, and that when he arrived at the site, the gate was already tied back with caution tape. Though plaintiff admitted that he did not directly see who tied the gate back, plaintiff contends that a reasonable juror could infer that it was an employee of defendant who tied the gate back because plaintiff was a member of the first Monarch crew on the job site. In addition to his own testimony, plaintiff also submits the deposition testimony of Dennis Huck and Charles Malley, two employees of defendant, in which both employees indicate that the gate should not have been secured in an open position with "caution" tape. Malley went so far as to say that "[plaintiff] got hurt because the tape was not the proper way of securing the gate." (Pl. supp. br., Exh. D at 36.) Plaintiff asserts that, from this testimony, a reasonable jury could infer that defendant was negligent regardless of whether defendant retained possession and control over the premises when Monarch was performing its repairs.

This court agrees. The cases upon which defendant relies to establish that possession and control of the premises are necessary for the imposition of liability against defendant in this case rest on the assumption that the negligent conduct that was the direct cause of the accident is attributable to *someone other than the owner/general contractor.* For example, defendant relies heavily on *Samodai,* in which the plaintiff, an employee of

an independent contractor, was injured when he fell from a wooden pallet placed on the prongs of an elevated forklift operated by one of his coworkers. Clearly, there was no negligent conduct on the part of the owner of the premises, other than its alleged failure to supervise, that led to plaintiff's injury. More telling is the *Samodai* court's reliance on *Funk* and *Bosak* for the proposition that an owner is not liable to an employee of an independent contractor for negligence absent the retention of control over the manner in which the work is performed. The passage in *Funk* upon which the *Samodai* court relied provides that "[o]rdinarily a landowner is not responsible for injuries *caused by a carefully selected contractor* to whom he has delegated the task of erecting a structure." *Funk*, 392 Mich. at 101, 220 N.W.2d 641.[1] The passage in *Bosak* upon which the *Samodai* court relied provides that the general rule is "that an employer of an independent contractor is not liable for *the contractor's negligence or the negligence of his employees.*" *Bosak*, 422 Mich. at 724, 375 N.W.2d 333 (citing 2 Restatement Torts, 2d § 409). In *Merritt*, the court held that "[a] 'possessor' of property must exercise reasonable care in avoiding harm to others on his property *from the negligent acts of third persons* because he is in a position to exercise the power of control or expulsion." *Merritt*, 407 Mich. at 554, 287 N.W.2d 178 (citations omitted). Defendant also relies heavily on *Orel*, which is based almost entirely on the Michigan Supreme Court's holding in *Merritt*. In addition, in *Signs*, the court specifically noted that the plaintiff "was killed by the active, direct negligence of the crane operator, a co-employee of [the independent contractor]." *Signs*, 93 Mich.App. at 641, 287 N.W.2d 292. Finally, this court notes that the decisions in *Plummer* and *Signs* were based on § 414 of the Second Restatement of Torts. Comment (a) to § 414 provides, in relevant part, " '[i]f the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability *for the negligence of the employees of the contractor engaged therein ....*' " *See*

*Plummer*, 440 Mich. at 660, 489 N.W.2d 66 (quoting 2 Restatement of Torts, 2d § 414, Comment (a)).

Considering this authority, this court rejects defendant's argument that defendant is not subject to liability in the absence of possession and control of the premises at the time of plaintiff's injury under any circumstances. In fact, if plaintiff is able to establish that an employee of defendant tied the gate back with "caution" tape prior to the arrival of any Monarch employee on the premises, plaintiff may be able to establish that defendant breached its duty to plaintiff as a business invitor. It is well settled that an "owner of premises has a duty to warn an invitee of hidden defects or dangerous conditions on the premises. This duty is also applicable to contractors or subcontractors performing services on the premises." *Kirner v. Central Foundry Div., Gen. Motors Corp.*, 41 Mich.App. 211, 213, 199 N.W.2d 827 (1972)(citing *Thompson v. Essex Wire Co.*, 27 Mich.App. 516, 183 N.W.2d 818 (1970); *Clark v. Dalman*, 379 Mich. 251, 150 N.W.2d 755 (1967)). As the court noted in *Hughes v. PMG Bldg., Inc.*, 227 Mich.App. 1, 9–10, 574 N.W.2d 691 (1997), "an invitee is a person who enters the land of another on an invitation that carries with it an implication that the owner has taken reasonable care to prepare the premises and to make them safe ... [and that this] duty of care generally extends to invitees who are employees of independent contractors." *Id.* (citations omitted). Accordingly, this court finds that defendant owed Monarch and Monarch's employees a duty to take reasonable care to prepare the premises and to make them safe before it turned its premises over to Monarch. In addition, this court finds that plaintiff has produced sufficient evidence, in the form of his own deposition testimony and that of Mr. Huck and Mr. Malley, to present a genuine issue of material fact as to whether an employee of defendant tied the gate back with "caution" tape, and if so, whether tying the gate back in that manner was a breach of defendant's duty to take reasonable care to

---

1. This court also notes that the court in *Miller*, another case upon which defendant heavily relies, also cited *Funk* for the proposition that

liability may not be imposed without control over the premises.

make its premises safe for the employees of Monarch.

■■■ Defendant makes the additional argument that it is entitled to summary judgment in this case because the danger posed by the gate was "open and obvious." It is true that there is an exception to the general rule that business invitors have a duty to warn independent contractors of hidden defects or dangerous conditions "when the condition or defect is obvious to the contractor or invitee." *Kirner*, 41 Mich.App. at 213, 199 N.W.2d 827. However, defendant is unable to show at this stage that this exception applies to this case.

In *Novotney v. Burger King Corp.*, 198 Mich.App. 470, 499 N.W.2d 379 (1993), the Michigan Court of Appeals upheld the grant of a summary judgment to defendants on a claim involving· an inclined handicap-access ramp. The court noted:

> [T]he analysis of whether a danger is open and obvious does not revolve around whether steps could have been taken to make the danger more open and obvious. The question is: Would an average user of ordinary intelligence have been able to discover the danger and the risk presented *upon casual inspection?* That is, is it reasonable to expect that the invitee would discover the danger?

*Id.* at 474, 499 N.W.2d 379 (emphasis added). The court went on to note that to survive a motion for summary judgment in such a case, a plaintiff must "come forth with sufficient evidence to create a genuine issue of material fact that an ordinary user upon casual inspection could not have discovered the existence of [the danger]." *Id.* at 474–75, 499 N.W.2d 379.

In this case, it seems clear to this court that there is a genuine issue of material fact as to whether an ordinary person in plaintiff's position would have discovered the danger posed by tying back the gate with "caution" tape upon casual inspection. It is not at all clear that an ordinary person would discover upon casual inspection that the gate was spring-loaded, or that the gate would close with such force as to injure a hand caught in the frame of the gate. Accordingly, on the record as it currently stands, this court rejects defendant's argument that the risk in this case was open and obvious.

**Conclusion**

For the reasons set forth above, this court finds that plaintiff is unable to establish a genuine issue of material fact as to whether defendant retained a sufficient amount of possession and control of the property such that defendant would be liable for the negligence of one of its contractors or their employees in this case. Accordingly, to the extent plaintiff's claims rest on the contention that defendant is liable to plaintiff for his injuries based on the fact that defendant retained sufficient control over the premises and the work being performed, defendant's motion for summary judgment is granted. However, plaintiff has established a genuine issue of material fact as to whether an employee of defendant tied the gate back and whether such an action would act as a breach of defendant's duty as an invitor to make its premises reasonably safe for contractors. Therefore, to the extent that plaintiff's claims rest on this theory, defendant's motion for summary judgment will be denied.

Accordingly, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) is **GRANTED in part and DENIED in part** in accordance with the terms set forth in this opinion.

**SO ORDERED.**