PEOPLE v MASON JACKSON

PEOPLE v WILLIE JACKSON

1. RAPE—EVIDENCE—PROTESTS.

Refusal to exclude complainant's answer, in response to a defense question in a prosecution for rape, which of the four defendants she had asked not to kill her, that "I probably told it to all of them" was not reversible error where the complainant had testified she had been continually crying and pleading with the four rapists not to kill her and her answer, while inexact, suggested a generally terrified condition during her ordeal and adequately stated what she felt was her continual protest at being forced to act against her will (MCLA 750.520).

2. RAPE—EVIDENCE—WITNESSES—EXTRAJUDICIAL STATEMENT—FOUNDATION.

Prosecutor's verbatim reading to a res gestae witness, in a prosecution for rape, of his out-of-court statement to the police that he knew when he saw the complainant in defendant's apartment she was being held against her will, while improper because the statement had not been admitted into evidence, was not reversible error where the trial judge quickly admonished the prosecutor not to read the statement and struck the prosecutor's question *sua sponte,* the prosecutor's questions thereafter did not refer to the witness's written statement, the defendants failed to raise any objections, and no injustice resulted (MCLA 750.520).

3. RAPE—EVIDENCE—HEARSAY.

Failure to instruct the jury to disregard certain testimony of an arresting officer that he informed one of the defendants that he was being arrested for rape and that defendant said he didn't

REFERENCES FOR POINTS IN HEADNOTES

[1] 65 Am Jur 2d, Rape §§ 1–14.

[2] 65 Am Jur 2d, Rape §§ 79, 80.

[3] 65 Am Jur 2d, Rape § 55.

[4] 65 Am Jur 2d, Rape § 53 *et seq.*

[5] 5 Am Jur 2d, Appeal and Error § 813.

[6] 65 Am Jur 2d, Rape § 110.

know anything about a woman being in the house, was not reversible error where the trial judge immediately instructed the officer not to repeat any possible conversations with the defendants, the defense did not specifically object to the officer's testimony, and did not later request a curative instruction (MCLA 750.520).

4. RAPE—EVIDENCE—PHOTOGRAPHIC NEGATIVE—OBJECTIONS.

Admission into evidence at defendants' trial for rape of a Polaroid negative depicting a woman sitting up or lying in a bed, which was found by police in defendants' apartment when they were arrested, was not error where the complainant had testified that one of the defendants had taken a picture of another defendant on her, and defendants objected at trial to its admission because of an improper search, an issue abandoned on their appeal, but on appeal objected that the arresting officer did not know whether he found the negative in the kitchen or living room of defendants' premises, an objection not made at trial, but the officer testified at trial that he found the negative in the kitchen (MCLA 750.520).

5. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY.

Jury instructions must be read in their entirety, not out of context, and where an instruction, when taken as a whole, sufficiently apprised the jury of the proper standards to be used in determining a defendant's guilt, reversible error cannot be predicated upon part of the instruction.

6. RAPE—LESSER OFFENSE—INSTRUCTIONS TO JURY—INJUSTICE.

Instructing the jury on the lesser included offense of assault with intent to rape in defendants' trial for rape was not reversible error where defendants failed to object to the instruction in the lower court, they were convicted of the greater offense, and no clear injustice resulted (MCLA 750.520).

Appeal from Recorder's Court of Detroit, Henry Heading, J. Submitted Division 1 June 22, 1972, at Detroit. (Docket No. 11736.) Decided August 29, 1972.

Mason V. Jackson and Willie J. Jackson were convicted of rape. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Kenneth A. Webb,* for defendant on appeal.

Before: LESINSKI, C. J., and J. H. GILLIS and McGREGOR, JJ.

LESINSKI, C. J. Defendants Mason Victor Jackson and Willie J. Jackson were convicted by a jury of carnal knowledge of a female over 16, MCLA 750.520; MSA 28.788. They appeal as of right.

Complainant testified that on Saturday, December 27, 1969, she was accosted and forced into a car by a man with a gun whom she later identified as William Ike Holliday. His brother, Joseph Lee Holliday, was waiting for her and helped pull her into the car. Once inside the car, William Holliday proceeded to rape her while she was forced to perform fellatio with Joseph Holliday.

The Hollidays drove complainant to an apartment house where defendants Jackson resided. The car was parked in an alley near the apartment house. While there complainant testified that the Hollidays again raped her and forced her to perform fellatio. During this time she was warned that she would be killed if she didn't cooperate. Joseph Holliday then left the car and went into the apartment house. He hollered to William Holliday that it was okay to bring her up. She testified that William Holliday proceeded to pick her up and while holding a gun to her head, carried her upstairs to the Jackson apartment where she was placed in the bedroom. Complainant testified that she was crying during this time. She further

stated that she was again threatened by William Holliday that he would kill her if she didn't cooperate. She stated that while she was inside the apartment she did not see the gun.

Once in the bedroom she was again forced to have intercourse with William Holliday. Joseph Holliday then had sexual intercourse with her and forced her to perform fellatio. She testified that when Joseph Holliday finished with her, each of the defendants Jackson brothers was in turn called into the bedroom and each had sexual intercourse with her. One of the Jackson brothers also had her perform fellatio. She further testified that one of the two Jackson brothers took a Polaroid picture of "one of the other ones on me. * * * And they told me to stop crying so he could take a beautiful picture. And they took one of me standing up."

When the Jackson brothers had finished having intercourse with her, a fifth man, Leslie Wells, Jr., a brother-in-law of both defendants Jackson, came into the room and the Jacksons told him it was his turn. Complainant testified that Wells told her she looked like a nice girl and to get her clothes on and leave. Wells testified that he had told the police that at first he thought she was a prostitute, but when he saw her crying he realized she was being held against her will. Just as complainant was starting to get dressed, the Jacksons returned to the room and wanted to know what was going on. At that time Wells left. One of the Jackson brothers then had intercourse with her. She testified that after he finished he told her that she should relax because she couldn't leave until six o'clock when the Holliday brothers were coming back for her. During this time the Jackson brothers let her go to the kitchen to get something to

eat. While in the kitchen she managed her escape by forcing open a back door.

At trial, defendants did not deny that they had had sexual intercourse with the complainant. Instead, defendants based their defense on the grounds that they were unaware that she was acting against her will.

Defendants first contend that the trial court committed reversible error in failing to strike certain testimony of complainant which she made while being cross-examined by counsel for codefendants Holliday.

> "*Q.* Did you protest to Joseph?
> "*A.* What do you mean, did I—
> "*Q.* Did you tell him not to do it to you?
> "*A.* I was crying. Yes. I asked him not to kill me.
> "*Q.* You told that to who?
> "*A.* I probably told it to all of them.
> "*Q.* Well, I—
> "*Mr. Kraizman:* I ask that your Honor strike that 'probably'.
> "*The Court:* No, that will stand." (Emphasis supplied.)

While the statement "I probably told it to all of them" was inexact, we do not believe the trial court committed reversible error by refusing to exclude it. Complainant testified that she had been continually crying and pleading that she not be killed. Complainant's answer suggests a generally terrified condition during this ordeal. It adequately states what she felt was her continual protest at being forced to act against her will. The answer being proper, there was no error in the trial court's refusing to strike it.

Defendants next contend that it was reversible error for the prosecutor to read to witness Wells in the form of a quotation his out-of-court statement

made to the police in which he stated that he knew that complainant was being held against her will. The following exchange took place during the cross-examination of Mr. Wells:

"*Q.* Now, Mr. Wells, did you tell the police this: 'I thought at first she was that kind of a girl, but when I saw her crying, I knew she was being held against her will'.

"Did you—

"*The Court:* All right, now don't read from that statement.

"*Mr. McMahon:* I want to know if he made that statement, your Honor.

"*The Court:* All right. But you are looking down at that paper; now get that paper away from you, and then you won't—and strike that question. Now, if you want to rephrase it, go ahead.

"*Mr. McMahon:* All right.

"*Q. (By Mr. McMahon):* Mr. Wells, did you tell the police, when you talked to them a couple of days after this happened, that at first you thought she was a prostitute, but when you saw her crying you realized she was being held against her will.

"Now, did you tell the police that?

"*A.* I might have. It has been a long time. It's been twelve months. I have been in five hospitals and had two strokes.

"*Q.* Did you make that statement to the police?

"*A.* I think I might have did, yes."

While it was improper for the prosecutor to read verbatim from the statement Wells made to the police without having it admitted into evidence, we do not believe it constituted reversible error given the trial court's swift response. The trial court acted diligently in admonishing the prosecutor not to read the statement and striking the question on its own motion. The questions thereafter were proper in that they did not refer to a

written statement. It is also noted that defendants failed to raise any objections. As we have repeatedly stated, where defendants fail to object at trial, this Court will not review issues raised for the first time on appeal unless a clear injustice has resulted. *People v McIntosh,* 34 Mich App 578 (1971). In light of the trial court's action, we find no such injustice resulted here.

Defendants also contend that the trial court committed reversible error in failing to instruct the jury to disregard certain testimony of a police officer. The police officer testified:

> *"The Witness:* We were let in by one of the defendants. And he fitted the description—the one that opened the door fitted the description of one of the men that we wanted, and so we told him he was under arrest. He wanted to know what for. We told him. And then we informed him of his rights. And he said he didn't know anything about a woman.
>
> *"Mr. Posner:* Objection.
>
> *"The Witness:* Being in the house.
>
> *"The Court:* All right. Don't tell us what your conversation with him was."

Defendant raised no specific objection when the officer testified. Nor did he later request a curative instruction from the trial court. Failure to request an instruction or object to the instructions as given waives the error on appeal absent manifest injustice. *People v Timmons,* 34 Mich App 643 (1971). We find no such manifest injustice given the fact that the trial court prohibited the police officer from testifying about possible conversations with the defendants.

Defendants next contend that the trial court committed reversible error by admitting into evidence people's exhibit B (a Polaroid negative depicting a woman sitting up or lying in a bed) in

light of the fact that the police officer who arrested defendants did not know whether such exhibit was found by him in the kitchen or in the living room. Defendants did not raise this specific objection at trial. On the contrary, at trial defendants had objected to the admission on the grounds that it was the product of an improper search (an issue they do not raise on appeal). Furthermore, the police officer testified that the negative was found in the kitchen.

"*Q.* And when you came into the apartment, where were you in the apartment?

"*A.* In the kitchen. Walked in the kitchen.

"*Q.* All right. And did you notice anything unusual in the kitchen, after you had entered?

"*A.* Well, I walked in and picked up a picture.

"*Q.* All right. Now, I am going to show you a piece of what appears to be photographic paper—in fact, appears to be the kind of photographic paper used in instant-development-type cameras, and I am going to ask you if you recognize it?

"*A.* Yes, I do.

"*Q.* And where did you find that?

"*A.* In the kitchen, on the floor.

"*Q.* I'm going to ask you to describe it further.

"*A.* Well, it appears to be a woman, maybe sitting up or laying down in a bed."

Defendants' contention is, therefore, without merit.

Defendants also objected to certain jury instructions which they maintain had the effect of informing the jury that in order to acquit defendants they had to find beyond a reasonable doubt that defendants did not know that the complainant had been previously threatened. On appellate review, jury instructions must be read in their entirety. *People v Elkins,* 39 Mich App 603 (1972). A thor-

ough examination of the instruction convinces this Court that defendants' contention is without merit. The trial judge's instruction when taken as a whole sufficiently apprised the jury of the proper standards to be used in determining guilt.

Defendants thereupon contend that the trial court committed reversible error by erroneously instructing the jury on the lesser included offense of assault with intent to rape. No objection was made to this instruction. Objection not raised in the court below will not be considered by this Court on appeal in the absence of clear injustice. *People v Edwards,* 35 Mich App 233 (1971). Defendants being convicted of the greater offense, we find no clear injustice resulted.

The record establishes that there was sufficient evidence from which a jury could determine that defendants had committed the offense in question. Defendants' motion for a directed verdict was, therefore, properly denied.

Affirmed.

All concurred.