PEOPLE v HOLLIDAY

1. Criminal Law—Res Gestae Witnesses—Prior Statements—Instructions to Jury.

> The use of a prior statement of a res gestae witness to refresh the witness's recollection did not constitute a use to impeach the witness and was only an effort to show that the testimony was evasive, thus there was no requirement for the trial judge to give a limiting instruction to the jury *sua sponte* that the statement could not be considered as substantive evidence.

2. Criminal Law—Statements to Jury—Coerced Verdict.

> Any error that may have resulted from a statement by the trial judge to the jury that he was ready to declare a mistrial because of the length of the jury's deliberation, thus raising the possibility of a coerced verdict, was cured by the judge's subsequent statement making it manifestly clear to the jury that they must take their own good time in reaching their decision and that he did not want a forced verdict.

3. Criminal Law—Jury's Verdict—Unclear Statement of Foreman.

> The trial court's questioning of the jury foreman, after he had given the verdict of the jury, that merely served to clarify the verdict was not an attempt by the trial judge to mold the jury's verdict to suit himself since where the foreman's statement of the jury's decision is not clear, the trial court has an obligation to ascertain the real verdict of the jury, and where the jury is properly polled, there is no prejudicial error from such questioning.

Appeal from Recorder's Court of Detroit, Henry Heading, J. Submitted Division 1 October 6, 1972,

References for Points in Headnotes

[1] 53 Am Jur, Trial § 775 *et seq.*
[1–3] Comments and conduct of judge calculated to coerce or influence jury to reach verdict in criminal case, 85 ALR 1420.
[2] 53 Am Jur, Trial § 958.
[3] 53 Am Jur, Trial § 1035 *et seq.*

at Detroit. (Docket No. 13906.) Decided December 6, 1972. Leave to appeal applied for.

William F. Holliday and Joseph L. Holliday were convicted of rape. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*James R. Neuhard,* Acting State Appellate Defender, for defendant.

Before: LESINSKI, C. J., and FITZGERALD and J. H. GILLIS, JJ.

LESINSKI, C. J. Defendants were charged in a two-count information with rape and armed robbery, MCLA 750.520; MSA 28.788, and MCLA 750.529; MSA 28.797. They were convicted by a jury of rape; they appeal as of right.

Defendants contend the trial court erred when it failed to instruct the jury *sua sponte* that the prior inconsistent statements of a res gestae witness could not be considered as substantive evidence and were admissible only for the limited purpose of impeaching credibility.

The complainant testified that she was forced at gunpoint into the defendants' car. The defendants then forced her to have sexual relations. Being interrupted in the car, they drove to the nearby apartment of two other codefendants who also had forced sexual relations with her.[1] Witness Leslie

---

[1] *People v Mason Jackson,* 42 Mich App 468 (1972).

Wells, Jr., was in the apartment at the time of this incident.

Leslie Wells, a brother-in-law of the Jacksons, codefendants at trial, was called as a res gestae witness by the prosecution. Mr. Wells' testimony was evasive. He sought in his testimony to establish that while he was on the scene of the alleged offense, he was very drunk and that because of the passage of time and the present state of his health, his recollection of the event was unclear. The prosecutor asked Wells if he had previously made a statement to the police. Wells admitted making a statement and he identified a paper with handwriting on both sides of it as bearing his signature. Wells was given the paper to read for the purpose of refreshing his recollection. Wells identified the paper as bearing the information given by him. The prosecutor proceeded to ask questions obviously based on matter contained in the statement. The prosecutor did not attempt to introduce the statement into evidence or to read it into the record.[2] At the point that the trial judge thought the prosecutor was reading from the statement in the guise of a question, the judge admonished the prosecutor not to do so. He then rephrased the question.

The testimony of Mr. Wells before and after use of the statement for refreshing his recollection, when carefully examined, sheds no light on the allegation that force was used by the defendants nor does it support or deny the contention of defendants that the sexual encounters were voluntary. While the questioning of Mr. Wells affected

---

[2] On this point we distinguish the instant case from *People v Rodgers*, 388 Mich 513 (1972). Evidence here also indicates that witness Wells had signed the statement given him in order to refresh his memory.

his credibility as a witness, the effort of the prosecutor can be described as a strong effort to show, after refreshing the witness' recollection, that the witness was evasive. Neither the statement nor any other evidence was used to impeach Mr. Wells as a witness. Counsel for defendants made no request for a limiting instruction, the court gave none, and they were not entitled to one. Further, no objection was made to the final charge given by the trial court.[3]

We distinguish this case from *People v Durkee,* 369 Mich 618 (1963), and *People v Eagger,* 4 Mich App 449 (1966), on the basis that in both of these cases the *only* substantial evidence introduced was the prior statement admitted for impeachment purposes. Here we conclude the jury simply believed other persuasive testimony in favor of the prosecution's theory of events.

Defendants also cite as error comment made to the jury by the trial judge when the jury returned to the courtroom, after it had been deliberating nearly six hours. The trial judge said:

"All right. And I don't like long drawn-out verdicts; it seems to me sometimes you are forcing it, and you have been out today, and I don't like for one side to try to persuade the other side too long, because then I don't think you are getting a fair and impartial verdict. And maybe I am doing it a little too soon and maybe I am not, but I am at the point now, at the request of defense counsel, to declare a mistrial. Are you close to a verdict [?]

---

[3] MCLA 768.29; MSA 28.1052, provides:

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

GCR 1963, 516.2 provides essentially the same:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict."

"*The Foreman:* We have only decided one charge so far, your Honor."
        *(The jury was then excused from the courtroom.)*

In the absence of the jury, a motion for mistrial was made by the defense counsel. The motion was denied. The jury returned five minutes later and the trial judge made the following statement:

"*The Court:* All right; members of the jury, I am going to permit you to continue your deliberations, and I want to say to you, do not let this interruption interfere with your judgment either way.

"Now, I want to get over to you very strongly on that, I did not call you out here to try to hurry you up, and don't hurry up; take your own good time.

"And I want to say this, do not let this interruption mean that you should change your viewpoint, because it does not; stand by your convictions. It is no disgrace to be standing alone, if you are standing alone, or if you have some company. I do not want a forced verdict in this case.

"All right, now go back and start deliberating again."

Counsel claims the declaration by the trial court of his readiness to declare a mistrial had a coercive effect in hurrying the jury's verdict. It is true the jury deliberated for but one hour after the judge's charge before returning its guilty verdict. Nevertheless, we are not privileged to know what transpired in the 5 hours and 50 minutes of prior deliberation and we cannot say with any accuracy what decisions the jury made. The trial judge cured any error by making it manifestly clear to the jury that they must take their own good time. On all the facts and circumstances, we hold the jury in this instance was not coerced in its verdict. *Zeitz v Mara,* 290 Mich 161 (1939). See also *People v Kasem,* 230 Mich 278 (1925).

Defendant contends also that the trial judge

endeavored to mold the jury's verdict to suit himself. After the jury returned the verdict was announced by the foreman:

*"The Foreman:* We the jury find the defendants William Holliday and Joseph Holliday guilty of assault and rape.

*"The Court:* Wait just a minute. You say guilty of assault and rape?

*"The Foreman:* Right.

*"The Court:* Yes. Let me ask you a question. Did you find them guilty of rape and assault with intent to rape, or did you just find them guilty of assault with intent to rape?

*"The Foreman:* We found them guilty of assault and rape, not with intent to rape.

*"The Court:* All right.

*"The Clerk:* How about Mason and Willie Jackson?

*"The Foreman:* We the jury find the defendants Mason and Willie Jackson guilty of assault and rape.

*"The Clerk:* Members of the jury,—

*"The Court:* Wait just a minute. You find them guilty of two offenses or one now?

*"The Foreman:* Just one offense.

*"The Court:* Just one offense.

*"The Foreman:* The Jacksons.

*"The Court:* See, I gave you some included offenses.

"Now, do you just find them guilty of rape, or do you find them guilty of rape and assault with intent to rape?

"What is your verdict?

*"The Foreman:* The verdict is they are only guilty of rape, as far as the Jacksons went. Yes, as far as the Jackson brothers.

*"The Court:* All right.

"Now, how do you find the Holliday brothers, either individually or collectively?

*"The Foreman:* Collectively we find them guilty of assault and rape.

*"The Court:* Then do you find them not quilty of the robbery armed charge?

*"The Foreman:* Yes. We find them not guilty of the robbery armed.

*"The Court:* All right. Well, if you find them guilty of rape, then the included offenses in that charge—Do you find them guilty or not guilty of rape? What is it, now?

*"The Foreman:* The jury found them guilty of rape, your Honor.

*"The Court:* All right. Do you wish to have the jury polled?

*"Mr. Posner:* Yes, your Honor.

*"Mr. Kraizman:* Yes, your Honor.

*"The Court:* All right."

*(The jury was polled by the court clerk.)*

The instructions to the jury had been lengthy and complex. There were four defendants. A great variety of verdicts was possible. The jury had a very difficult task in sorting through the evidence and applying the law.

The verdict of the jury has to be clear. It is a matter of right that a defendant have a proper record made of the exact offense of which he has been convicted. *People v Stuart,* 274 Mich 246 (1936). In circumstances where the foreman's statement of the jury's decision is not clear, the trial court has an obligation to ascertain the real verdict of the jury. *Rabior v Kelley,* 194 Mich 107 (1916); *Standard Oil Co v Gonser,* 331 Mich 29 (1951). The trial court's questioning of the foreman simply clarified the verdict. *People v Fleish,* 306 Mich 8 (1943); *People v Jenkins,* 23 Mich App 39 (1970). The jury was properly polled. We find no prejudicial error.

Affirmed.

All concurred.