PEOPLE v WILLIE PEARSON

PEOPLE v LINDSEY PEARSON

OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—INDORSEMENT
—PROSECUTORS—ACCOMPLICES—ALIBI.

Res gestae witnesses must be indorsed on the information of a
criminal prosecution, but the prosecution is not required to
indorse a person alleged by the defense to have been present at
the scene where it was determined at a judicial hearing that
that person had a completely satisfactory alibi and was not
present at the robbery, and where, had that person been
present, under the testimony, he would have been an accom-
plice and properly excludable from indorsement.

2. WITNESSES—CRIMINAL LAW—PROSECUTORS—THREATS—SEPARATE
CHARGES.

Prosecutors may not threaten witnesses with prosecution in
separate cases in order to obtain favorable testimony in a
present case, but neither can they be required to delay for an
indeterminate time the filing of charges against a prospective
witness where that prospective witness is chargeable with a
crime in a separate matter.

3. WITNESSES—CRIMINAL LAW—IMPEACHMENT—PRIOR STATEMENTS—
FOUNDATION—REFERENCE.

A prosecutor who merely flips through a yellow tablet as he
questions a witness has not improperly impeached that witness
by use of a prior statement without first having laid a sufficient

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[2] 29 Am Jur 2d, Evidence § 293.
[3] 58 Am Jur, Witnesses §§ 714, 776.
[4] 75 Am Jur 2d, Trial §§ 148, 174.
[5] 5 Am Jur 2d, Appeal and Error § 545.
[6, 8] 75 Am Jur 2d, Trial §§ 678, 719, 865.
[7] 75 Am Jur 2d, Trial §§ 765, 766, 781.

foundation where there was no reference by the prosecutor to the written statement during the questioning.

4. CRIMINAL LAW—TRIAL—PROSECUTOR'S STATEMENTS—REBUTTAL—CLOSING ARGUMENT—IMPROPER STATEMENTS—APPEAL AND ERROR.

Statements made by a prosecutor in rebuttal argument which are made in response to matters first raised by the defense in closing argument are permissible and even if improper, will not constitute reversible error because it is permissible for the prosecutor to respond to matters raised by the defense.

5. APPEAL AND ERROR—PRESERVING QUESTION—INSTRUCTIONS TO JURY—OBJECTION TO INSTRUCTIONS—ERRONEOUS INSTRUCTION—CORRECTION.

The Court of Appeals will not pass on a claim that reversible error was committed by the submission to the jury of an erroneous instruction where the instruction was objected to at trial and was corrected by the court without further objection by defense counsel.

6. HOMICIDE—INSTRUCTIONS TO JURY—FELONY MURDER—FURTHERANCE OF UNLAWFUL ACTIVITY—APPEAL AND ERROR.

The submission to the jury in a felony-murder trial of an unequivocal instruction that if the homicide took place in the motel lobby rather than the motel room in which the robbery occurred it would make no difference as long as the parties left the motel room in furtherance of the unlawful activity is not in error.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—VERDICT—UNANIMITY—PRESUMPTION OF INNOCENCE.

An instruction to the jury by a trial court in a felony-murder trial that the defendants are presumed innocent "until you and each and every one of you are satisfied beyond a reasonable doubt of each defendant's guilt", meets the requirement that the jury be instructed that their verdict must be unanimous.

CONCURRENCE AND DISSENT BY V. J. BRENNAN, J.

8. HOMICIDE—INSTRUCTIONS TO JURY—ROBBERY—FELONY MURDER—APPEAL AND ERROR.

*An instruction to a jury in a felony-murder trial that if they are satisfied beyond a reasonable doubt that there was a robbery or an attempt to commit a robbery in the motel room and that the parties left the motel room in furtherance of the unlawful*

*activity, the fact that the actual murder took place in the motel
lobby rather than the motel room would have no effect on the
situation because it would be part of the continuing offense is
not reversibly erroneous where the proofs do establish that
murder in fact had been committed and the only question was
whether the defendants had or had not committed it.*

Appeal from Recorder's Court of Detroit, Robert
J. Colombo, J. Submitted Division 1 February 12,
1975, at Detroit. (Docket Nos. 20062, 20063.) De-
cided May 29, 1975. Leave to appeal applied for.

Willie Pearson and Lindsey Pearson were con-
victed of first-degree murder. Defendants appeal.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, and *Patricia J. Boyle,* Prin-
cipal Attorney, Research, Training & Appeals, for
the people.

*Carl Ziemba,* for defendants.

Before: V. J. BRENNAN, P. J. and D. E. HOL-
BROOK, JR. and O'HARA,* JJ.

O'HARA, J. These are appeals of right from
convictions by a jury of first-degree murder. The
charges were laid under our so-called felony-mur-
der statute. MCLA 750.316; MSA 28.548. The stat-
ute by its terms makes any homicide murder in
the first degree when committed in the perpetra-
tion or attempt to perpetrate certain specified
felonies.

The felony here involved is robbery.

Defendants set forth six assignments of error. To

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

understand them a skeletal fact recitation is necessary. When we use the term facts, we include claims of fact supported by sufficient evidence to make that claim of fact jury submissible.

Both named defendants were identified as being present and armed at the time and place of the homicide. The identity of a third person was controverted. One defendant took money, the other jewelry. The fact question as to the perpetration of the robbery was sufficiently established to go to the jury.

As to the killing in its perpetration, the defense contended that a third person, never apprehended or identified, came into the motel during the incident and fired the fatal shots.

It was the theory of the prosecution that the two named defendants acting in concert killed the deceased. There was ample testimony and circumstantial evidence to permit the jury to accept the theory of the prosecution.

We turn therefore to the assignments of error. We consider number one:

*Must defendants' convictions be reversed because the trial judge refused to indorse on the people's information the name of a res gestae witness?*

This assignment of error stated as a question includes its own answer. Of course res gestae witnesses must be indorsed on the information. But the whole question in this case is whether the third person, whose identity was in doubt, was, in fact, the third person in the room with defendants. He was originally charged with the two named defendants and the charge against him was dropped. This was no "deal" to obtain incriminating testimony. The prosecutorial authorities were satisfied that he had a completely satisfactory alibi.

The trial judge held a hearing on the issue out of the presence of the jury and found that the third party was not present and not a res gestae witness. Certainly, this issue had to be decided by the court. It couldn't be submitted to the jury. Furthermore, had he been present, under the testimony, he would have been an accomplice and an exception to the res gestae witness rule. *People v Moore,* 29 Mich App 597; 185 NW2d 834 (1971).

We find no merit in this claim of error. We do not think it necessary to advert to *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), hence we merely note it requires a prior motion for a new trial to perserve this issue for review.

The second claim of error is:

*Did the trial court commit prejudicial error by denying defendants' motion for a mistrial for prosecutorial misconduct for charging a witness with perjury and arresting two other witnesses?*

In support of this claim defendants cite, among others, a fourth circuit case, *Bray v Peyton,* 429 F2d 500 (CA 4, 1970), which, of course, we may consider but by which we are not bound. It is argued that by issuing warrants (one for perjury committed prior to this trial and two bench warrants for material witnesses after they had testified in the instant case to insure their appearance as witnesses in the unrelated perjury proceedings)[1] a "coercive" atmosphere was created. There is no suggestion that the warrants were not issued in compliance with all legal requirements. It is hardly necessary to restate that prosecutors may not threaten witnesses in order to obtain favorable testimony.

---

[1] The bench warrants were not executed and the witnesses were merely placed under bond as material witnesses to insure their appearance in the separate perjury case.

Such, however, is not the situation here. The witness charged with perjury testified that she was promised nothing in connection with her testifying. A review of her testimony shows little, if any, that was crucial. We cannot assume law enforcement officials, specifically prosecuting attorneys, issue perjury warrants to "buy" testimony. Nor can we place the stamp of judicial approval upon requiring prosecuting attorneys to delay for an indeterminate time the filing of charges because an accused is a witness in a separate case.

The third claim of error is somewhat difficult to understand completely. It reads as follows:

*The trial court committed prejudicial error by allowing the prosecutor to impeach a witness whom the prosecutor had charged with perjury allegedly committed in this case.*

In support of this assignment of error defendants argue as follows. The prosecutor had taken to the podium some yellow sheets of paper and flipped them over as he propounded the questions to the witness. The claim is made that the prosecutor allegedly read from a prior statement made by the witness to the police in an attempt to impeach the witness without first laying a sufficient foundation therefor.

Cited in support of this claimed error are two cases. One is *People v Jackson,* 42 Mich App 468; 202 NW2d 463 (1972). In *Jackson* the piece of paper the prosecutor had was an out-of-court statement made to the police. The trial judge admonished counsel "don't read from that statement". This is hardly support for the fact that an advocate cannot utilize the traditional yellow tablets or sheets therefrom while examining a witness. Defendants also cite *People v Thomas,* 359 Mich 251; 102 NW2d 475 (1960). This case is even less re-

lated to the one at bar since in that case admittedly the prosecutor was permitted to read, in the witness's presence and that of the jury, excerpts from a statement given the prosecutor three years before. He interspersed questioning while reading from it. In the instant case the court refused to allow the prosecutor to question the witness about the substance of the statement without first laying a foundation. The court subsequently refused to allow the reading of the statement to which objection was made. Nor may the prosecutor's questions be characterized as having the effect of using the witness's prior statement. The questions cannot be said to be improper since there is no reference to the written statement. *People v Jackson, supra.*

The fourth claim is prosecutorial misconduct in rebuttal argument to the jury. The argument concerned why the third man alleged to have been in the room when the claimed robbery was being committed or attempted to be committed was no longer in custody and there was "no case" against him. We quote one of the excerpts:

"You are told, ladies and gentlemen, that because the case against—or that because the particular person who was in custody, Raymond Collins, is no longer held that there is no case against him, that it means that the police and the prosecution don't believe Earline Pattaway. You are asked what other conclusion can you arrive at. The conclusion that you can arrive at is that the police and the prosecution know that he wasn't the man."

Certain others are specified by the defendants. We have examined the record with extreme care. All the statements, as before noted, were made in the prosecutor's *rebuttal* argument; each of the

questioned statements was made in response to defense counsel's remarks in his closing argument.

It is permissible for the prosecutor to respond in final argument to matters first raised by the defense in closing argument. *People v Thomas,* 17 Mich App 740; 170 NW2d 286 (1969). Hence, even if the remarks were improper, reversible error has not occurred. *People v Green,* 34 Mich App 149; 190 NW2d 686 (1971).

High as is the duty of the prosecutor not to take advantage of his public position of trust, it does not extend to sitting mute at the counsel table while his adversary is given virtual free rein.

The fifth error concerns claimed erroneous instructions. Two instructions are involved.

"In considering the testimony in this case, members of the jury, if in fact you are satisfied beyond a reasonable doubt that there was a robbery or an attempt to commit a robbery in the motel room and that the parties left the motel room in furtherance of the unlawful activity, the fact that the actual murder took place in the motel lobby rather than in the motel room would have no effect on the situation because it would be part of a continuing offense."

Standing alone this instruction would be reversibly erroneous. The learned trial judge obviously misspoke when he said: "the fact that the actual murder took place in the motel lobby rather than in the motel room would have no effect upon the situation."

Literally taken he said, "[a] murder took place". The question of whether either of the two defendants killed the deceased was an essential ingredient of the felony-murder charge. The other was that the killing took place in the perpetration or attempt to perpetrate the felony of robbery.

When alert defense counsel objected to the quoted charge the trial judge recalled the jury and charged them additionally as follows:

"Members of the jury, I am further going to charge you in this case that if you found that in fact an armed robbery or an attempt to commit an armed robbery was committed in the motel room but that when the parties left the motel room and entered into the lobby, if you have a reasonable doubt that these two defendants or another party with them did not cause the death of the deceased Mr. Kidd then you would likewise have to exercise that reasonable doubt in favor of the defendants and find each of the defendants not guilty."

To this instruction no objection was made. We can assume only that defense counsel was satisfied with it and acquiesced in it. Thus we may not properly pass on it on appeal.

We reject defendants' contention that it was reversibly erroneous for the trial court to instruct the jury that they could not convict "if you have a reasonable doubt that these two defendants * * * did not cause the death of the deceased" rather than stating it positively that if the jury entertained a reasonable doubt that the defendants caused the death of the deceased they must acquit.

We find no error as claimed in the trial judge's unequivocal instruction that if the homicide took place in the lobby rather than the motel room it would make no difference as long as "the parties left the motel room in furtherance of the unlawful activity". It was a jury question and properly submitted to them.

We reject claim of error number five that the charge of the court taken as a whole did not fairly present defendants' theory, including the fact that

some unidentified person came in the front door, killed the deceased and disappeared.

Lastly, we reject the contention that the trial judge did not instruct the jury that their verdict had to be unanimous. We quote:

"The defendants in this case are, as the defendants are in every criminal case, presumed to be innocent. That presumption attaches to them at the outset of the case and remains with them during the entire trial and during your deliberations in the jury room *until you and each and every one of you are satisfied beyond a reasonable doubt of each defendant's guilt.* You should attempt, members of the jury, to rationalize the testimony in this case, if you can, consistent with the theory of the innocence of each accused." (Emphasis added.)

"[Y]ou and each and every one of you", is as unanimous as can be required.

This case was most vigorously and competently tried by the defense and by the people. The trial judge literally went overboard in giving each counsel every opportunity to state his position, make objections and argue his theory of the case. By all the established requisites of our system the parties had a fair trial. The jury spoke. We cannot disturb its verdicts.

Affirmed, as to both defendants.

Judge D. E. Holbrook, Jr. concurs in the result only.

V. J. Brennan, P. J. *(concurring in part, dissenting in part).* I concur in Justice O'Hara's fine opinion except for his determination that this following instruction,

"In considering the testimony in this case, members of the jury, if in fact you are satisfied beyond a reasona-

ble doubt that there was a robbery or an attempt to commit a robbery in the motel room and that the parties left the motel room in furtherance of the unlawful activity, the fact that the actual murder took place in the motel lobby rather than in the motel room would have no effect on the situation because it would be part of a continuing offense",

"[s]tanding alone * * * would be reversibly erroneous". I do not concur in that statement for the reason that the proofs do establish that murder, in fact, had been committed, and for the trial judge, in his instructions, to use the term murder at this point was perfectly proper. The only question was whether these defendants had or had not committed it.