HAYNES v MONROE PLUMBING & HEATING COMPANY

1. TRIAL—OPENING STATEMENT—SUPPLEMENTARY STATEMENT—DIS-
CRETION.

A trial court is given very wide discretion in ruling .upon the
content and presentation of opening statements to the jury to
eliminate any possible question as to the sufficiency of content
provided no new issues are introduced into the case and issues
previously raised are not extended.

2. TRIAL—OPENING STATEMENT—SUPPLEMENTARY STATEMENT—DIS-
CRETION.

No abuse of discretion occurred in allowing plaintiff's counsel to
reopen his opening statement and read from the pleadings
where no attempt was made to introduce novel arguments or to
extend issues previously raised and defendant's counsel was
permitted to reply to the additional statements.

3. EVIDENCE—DEMONSTRATIVE EVIDENCE—DISCRETION.

The trial court in a wrongful death action acted within its
discretion in permitting the jury to view a mock exhibit which
depicted the pipes and valves of the steam system involved in
the accident resulting in the death of plaintiff's decedent and
which was merely demonstrative evidence designed to assist
the jurors in visualizing the schematic configuration of the
steam system and not an exact scale representation sought to
be introduced into evidence where the trial court first properly
cautioned the jury that the representation was not properly
constructed to scale.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur, Trial §§ 96, 452, 454.
[3] 53 Am Jur, Trial §§ 927–930.
[4] 23 Am Jur 2d, Depositions and Discovery §§ 282, 283, 285.
[5, 6] 53 Am Jur 2d, Master and Servant §§ 121–123.
[7] 53 Am Jur 2d, Master and Servant § 326.
[8] 5 Am Jur 2d, Appeal and Error § 696.
[9] 5 Am Jur 2d, Appeal and Error § 604.
[10] 5 Am Jur 2d, Appeal and Error § 673.
[11] 5 Am Jur 2d, Appeal and Error § 722.

4. TRIAL—DISCOVERY—DEPOSITIONS—EXPERT WITNESSES—DISCRETION OF COURT.

The trial court did not abuse its discretion in denying defense counsel's oral request made at trial to depose plaintiff's expert witness where the denial was based upon defense counsel's knowledge of the proposed expert witness, the fact that a motion was made at a second pretrial conference held almost three years after the filing of the complaint and discovery was denied and from such ruling defendant never filed an interlocutory appeal, defendant did not bring the issue before the trial judge prior to trial, and where the circumstances established no good cause requiring discovery at such a late state of the litigation.

5. NEGLIGENCE—DUTY—MASTER AND SERVANT.

A defendant who supplied to the employer of plaintiff's decedent welders, pipe fitters, and plumbers, and a foreman to provide direct supervision over defendant's employees in welding work involving a modification of a high-pressure steampipe system might properly be held liable for damages sustained when the steampipe burst where, considering the foreman's experience in steam system welding and his previous supervision of welding operations on the steam line in question, a jury could find a duty existed to report the absence of steam traps or screens to the employer's design engineers who designed the modification.

6. NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY.

Sufficient evidence was introduced at trial to permit the jury to determine whether defendant's failure to advise of the danger in a high-pressure steampipe section equipped with no traps or screens was the proximate cause of the steampipe's bursting and resultant injuries to plaintiff's decedent where plaintiff's witness testified that fundamental to removing a pipe section is that some provision be made for eliminating the water in the pipes, no drain for removal of the condensation was installed, and defendant's witness testified that no drain was necessary in the particular section because of the pitch of the pipe yet indicated it was possible that all the water did not drain from the pipe because of the imperfections or sagging and agreed that since the pipe was ruptured it could be inferred that water present in the pipe was the proximate cause of the accident.

7. MASTER AND SERVANT—BORROWED SERVANT—EVIDENCE.

Defendant's employees do not qualify as borrowed servants of plaintiff's decedent's employer within the meaning of the operation of the doctrine of *respondeat superior* where defendant

had a specific contract to perform for plaintiff's decedent's employer the welding operations required, defendant paid the employees and provided for fringe benefits and withholding deductions, and defendant's foreman determined who would perform the work and when it would be done as well as the type of weld to be used.

8. APPEAL AND ERROR—BRIEFS ON APPEAL—INSTRUCTIONS TO JURY—PRESERVING QUESTION.

A party's mere statement of a position in his appellate brief without argument or citation is insufficient to bring the party's asserted issue before an appellate court; therefore, a defendant's contention that grounds for a directed verdict exist because the jury was instructed with regard to implied warranty of fitness despite the lack of circumstances which would substantiate this charge being given will not be considered where no argument was presented nor authority cited in support of defendant's position specifically relating to implied warranty.

9. APPEAL AND ERROR—INSTRUCTIONS TO JURY—DAMAGES—PAIN AND SUFFERING—PRESERVING QUESTION—EVIDENCE.

Failure to object specifically precludes a party from assigning as error the giving of instructions to the jury; thus, a defendant may not assign as error the charge to the jury that pain and suffering might be considered as an element of damages where defendant objected to the court's statement made out of the jury's presence and prior to their being charged but did not object at the time of the charge, and especially where there was evidence that death or unconsciousness did not occur at the same instant that the accident causing the death occurred (GCR 1963, 516.2).

10. TRIAL—INSTRUCTIONS TO JURY—STANDARD JURY INSTRUCTIONS.

It is not error to refuse to give a requested jury instruction where no compelling reason for departing from a standard jury instruction is given; thus, a trial court did not err in refusing to give defendant's requested charge where, drawing from the Michigan Standard Jury Instructions, it sufficiently apprised the jury of the proper standard to be used.

11. TRIAL—ARGUMENT OF COUNSEL—CLOSING STATEMENT—RESPONSE.

Statements made by counsel in his closing argument may not be the cause of error if given in response to arguments made by opposing counsel.

Appeal from Monroe, William J. Weipert, Jr., J.

Submitted Division 2 March 13, 1973, at Detroit. (Docket No. 13518.) Decided August 27, 1973. Leave to appeal denied, 391 Mich —.

Complaint by Madeline Haynes, administratrix of the estate of Carl Haynes, deceased, against Monroe Plumbing & Heating Company for damages for wrongful death. Judgment for plaintiff. Defendant appeals. Affirmed.

*Donald A. Turner (Wilson, Portnoy, Basso, Keller & Avadenka, P. C.,* of counsel), for plaintiff.

*Bileti & Valenti* (by *Joseph J. Bileti* and *Norman L. Zemke),* for defendant.

Before: FITZGERALD, P. J., and V. J. BRENNAN and O'HARA,* JJ.

FITZGERALD, P. J. This is an appeal from a wrongful death action in which plaintiff's decedent (hereinafter called plaintiff) was granted a jury verdict of $155,573.97. Plaintiff was employed by Consolidated Paper Company in Monroe, Michigan, as a maintenance pipe fitter. Defendant, Monroe Plumbing & Heating Co., in addition to rendering plumbing and heating services, is also engaged in steam process piping. Plaintiff alleges that sometime prior to July 10, 1966, defendant negligently and in breach of implied warranty altered certain steam pipes in Consolidated's plant which resulted in the bursting of a steam pipe which killed plaintiff.

Virgil Parker, plaintiff's foreman, was the only witness to the accident. Parker heard vibrations in a steam pipe and directed plaintiff to close the valve. As he reached for the valve, the pipe burst.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Plaintiff was knocked against the wall by the water and steam which was released under great pressure. Parker ran to the powerhouse, shut the line off, and returned to the plaintiff lying unconscious on the floor directly beneath the valve. The direct cause of death was determined to be a fractured skull, though scalding was indicated as an antecedent cause.

Defendant supplied Consolidated with approximately 25 welders, pipe fitters, and plumbers at any given time. These employees were sent in response to Consolidated's request, and they received instructions from Consolidated's engineers. Though under the direction and control of Consolidated, defendant supplied its own foreman whose responsibility was to provide direct supervision over defendant's employees.

John Sabo was a licensed master welder employed by defendant. Sometime prior to July 10, 1966, he received instructions to cut off a section of pipe and seal the end by welding a steel plate over the opening. It was his decision as to the type of weld to be performed. He also determined which employees would perform the weld and when the work was to be done. The weld remained perfectly intact after the accident, and a subsequent inspection revealed the pipe burst one and one-half inches from the weld. Sabo had experience with other high-pressure steam lines and recognized the necessity for having drain traps installed in the system.

Plaintiff's expert witness, John Crankshaw, testified as to the actual cause of the accident. In every steam system it is necessary to remove condensation from the line prior to operation. This is accomplished by bleeding water out of the steam pipes through drains or traps which are opened

and closed depending upon the level of condensation. When a pipe valve is opened, the water volume is pushed by the steam until it fills the diameter of the pipe. The steam pressure accelerates the water which causes excessive pressure to be exerted on the pipe. By removing 500 feet of piping and sealing off the open end, the system became inherently dangerous because the drain traps which had relieved the condensation had been removed with the severed pipe section. He further stated it is fundamental to a master plumber that drain traps are required when a pipe section is sealed off.

Contradictory testimony was received from Allan Duval and George Lockwood, engineers employed by Consolidated. Duval stated he instructed the pipe fitters to sever the line and install a plate. He indicated there were three or four traps or drains in operation on the day of the accident. Lockwood testified that no accidents had occurred on the five or six occasions during which the valve was opened previously. In his opinion, the valve was opened too rapidly. He agreed with Duval that the system was equipped with an adequate number of drains and traps.

Defendant's motion for directed verdict following the submission of plaintiff's proofs, and motion for judgment *non obstante veredicto* following the verdict were denied. Defendant now appeals, alleging several errors which will be discussed *seriatim.*

Defendants argue that the trial court abused its discretion in allowing plaintiffs to reopen the opening statement and read to the jury from its pleading. The trial court is given very wide discretion in ruling upon the content and presentation of opening statements. GCR 1963, 507.1; *Coon v Williams,* 4 Mich App 325; 144 NW2d 821 (1966). It is

permissible to supplement opening statements to the jury to eliminate any possible question as to the sufficiency of content provided no new issues are introduced into the case and issues previously raised are not extended. *Turnbull v Roseland Park Cemetery Association,* 341 Mich 677; 68 NW2d 753 (1955). Defendant seeks to distinguish *Turnbull* from the instant case in stating that plaintiff's counsel's purpose in reopening his statement to the jury was an oversight in failing to read to the jury from the pleadings. The record does not so indicate. Plaintiff's counsel testified he sought to provide the jury with technical allegations of negligence that would be presented to them. No attempt was made to introduce novel arguments or to extend issues previously raised. Moreover, defendant's attorney was permitted to reply to these additional statements, thus eliminating any possible prejudice that may have resulted to defendant.

Defendant objects to plaintiff's reading from the pleadings during the extension of his opening statement. He cites *Scripps v Reilly,* 35 Mich 371 (1877), where plaintiff was not permitted to read to the jury evidence otherwise inadmissible because it was neither relevant nor competent if offered as evidence relating to the issue before the court. Defendant in the instant case does not object on those grounds. Rather, he argues that the pleadings represent allegations for which proof is required, and should not be considered as evidence. At no time does defendant contend, nor does a review of the pleadings read to the jury indicate, that any evidence was presented which otherwise would have been inadmissible as prejudicial, irrelevant, or incompetent. The pleadings subsequently read to the jury merely clarified the parties' positions by amplifying their respective arguments.

We are unable to conclude that the trial court abused its discretion or that prejudicial error occurred by admitting into evidence portions of the pleadings which were read to the jury.

Objection is made to plaintiff's use of a mock exhibit depicting the pipes and valves of the steam system involved. Central to this issue is the distinction between the use made of the exhibit and whether or not it was offered into evidence. We deal here with demonstrative evidence designed to assist jurors in visualizing the schematic configuration of the steam system, and not an exact scale representation sought to be introduced into evidence. The use of a similar aid was permitted in *Jackson v Sabuco,* 21 Mich App 430, 436; 175 NW2d 532, 535 (1970).

"Error is also alleged in that defense counsel was permitted to make a blackboard sketch of the Starlight Room while cross-examining plaintiff. In response to plaintiff's objection, the trial court ruled, 'It is understood it is only a drawing and he is not trying to make it to scale.' The use of visual aids of this type is left to the trial judge's discretion. McCormick, Handbook of the Law of Evidence, p 386, citing *Finch v W R Roach Co,* 295 Mich 589; 295 NW 324 (1940). Any alleged inconsistencies or inaccuracies in the sketch were raised in the presence of the jury. There was no abuse of discretion."

*Finch, supra,* cited by defendant, discussed the admissibility into evidence of a mock-up of a ladder from which plaintiff fell. The instant case does not involve this question since no offer was made to introduce the schematic mock-up into evidence. The trial court acted within its discretion in permitting the jury to visualize the network of pipes and valves after properly cautioning them that the representation was not constructed to scale.

Denied the opportunity to depose plaintiff's expert witness, John Crankshaw, defendant contends it was error to allow his testimony at trial over objection. GCR 1963, 302.2(1) prevents a witness who refuses to offer testimony when deposed by his adversary from later testifying at trial.[1]

We agree with plaintiff that the trial court did not abuse its discretion in denying defense counsel's oral request to depose plaintiff's expert witness. The denial of this request was based upon defense counsel's knowledge of the proposed expert witness, together with the fact that the motion was made in the middle of a lengthy trial. The Michigan Supreme Court upheld the trial court's decision in denying defense counsel's motion for discovery in *Klabunde v Stanley,* 384 Mich 276, 281–282; 181 NW2d 918, 920–921 (1970), in stating:

"Whatever rights any party may have to obtain the pretrial discovery, such rights are always subject to the trial judge's right and duty to control the flow of litigation. Standing alone, the fact that the lawsuit was then five years old when the trial judge denied discovery satisfies us that there was not an abuse of discretion in its denial. GCR 1963, 301.7 providing that discovery may not be had after the pretrial conference without special motion for good cause shown, was not in effect when this case went through pretrial conferences in February of 1964 and again in 1965. Nonetheless, the principle that a judge is responsible for moving his docket is not a new one, and discretion was always lodged in trial judges to deny discovery when that process interfered with expeditious disposition of civil litigation."

---

[1] GCR 1963, 302.2(1) reads in pertinent part: "If a party claims privilege on the part of the testimony of a witness at the taking of the deposition and the witness is not required to answer the question, the party claiming the privilege may not at the trial offer the testimony of the witness pertaining to the evidence objected to at the deposition."

The complaint in the instant case was almost three years old when defendant was denied discovery at the second pretrial conference which was held. GCR 1963, 301.7 provides there shall be no discovery after the pretrial conference unless such discovery is subsequently ordered by the court on written motion for good cause shown. Had the defendant filed an interlocutory appeal from the trial court's ruling or brought this issue before the judge prior to trial, the problem of jeopardizing a long and costly trial would have been eliminated. No circumstances establish good cause requiring the trial judge to permit discovery at that late stage of the litigation.

It is next argued that the trial court erred in failing to direct a verdict for the defendant on the question of negligence. Monroe believes the question of whether or not Sabo had a duty to observe the lack of traps and drains, foresee the danger which could result, and communicate this circumstance to Consolidated is a question of law to be decided by the court. Because defendant had no responsibility or authority to design or modify the pipe system, no duty to plaintiff's decedent existed other than to weld a plate in a workmanlike manner over the end of the specified pipe. *Elbert v Saginaw,* 363 Mich 463; 109 NW2d 879 (1961). However, sufficient evidence was presented at trial to enable the jury to determine the question of ultimate liability. Defendant's foreman, an experienced steam system welder, testified that drains or traps were necessary safety measures which were required in high-pressure steam lines, yet he indicated he was unaware that any were present in the sealed-off pipe section. Michigan cases have distinguished between the degree of care required when engaged in normal and dangerous activity.

"A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk. No absolute standard can be fixed by law, but every reasonable precaution suggested by experience and the known danger ought to be taken."

See *Thompson v Essex Wire Co,* 27 Mich App 516, 525; 183 NW2d 818, 823 (1970); *St. Paul Fire & Marine Ins Co v Michigan Consolidated Gas Co,* 4 Mich App 56; 143 NW2d 801 (1966); *McCord v United States Gypsum Co,* 5 Mich App 126; 145 NW2d 841 (1966); *Vannoy v City of Warren,* 15 Mich App 158; 166 NW2d 486 (1968); and *Young v Lee,* 310 Mich 42; 16 NW2d 659 (1944).

Considering the foreman's experience in steam system welding, and his previous supervision of welding operations on the identical steam line, a jury could find a duty existed to report the absence of steam traps or screens to Consolidated's design engineers. The possibility of a steam pipe bursting falls within that activity involving a dangerous agency.

Sufficient evidence was introduced at trial to permit the jury to determine whether the defendant's failure to advise Consolidated of the dangerous condition which existed was the proximate cause of the accident. Plaintiff's witness testified that fundamental to removing a pipe section is that some provision be made for eliminating the water in the pipes. This is accomplished by a drain being located near the welded portion of pipe section which removes condensation from the system. An engineer for Consolidated, Mr. Duval, stated there was no need for a drain in that particular section since the pipe had a three-degree pitch downward which would prevent water from accumulating in the pipe. However, he indi-

cated it was possible that all the water did not drain from the pipe because of imperfections or sagging, and agreed that since the pipe was ruptured it could be inferred that water present in the pipe was the proximate cause of the accident.

A final avenue available to defendant in seeking a directed verdict is that those employees assigned to work for Consolidated were borrowed servants. As such, their status as defendant's servants ceases and they become servants of the party (in this case, Consolidated) to whom they are temporarily loaned. The new master assumes liability for the negligence of the servant under the doctrine of *respondeat superior,* the original master being relieved of vicarious liability. Whether defendant's employees assumed the status of borrowed servants requires that several factors be considered. *Renfroe v Higgins Mfg Co, Inc,* 17 Mich App 259, 265; 169 NW2d 326, 329 (1969), departs from the singular concept of "control" in favor of an expanded analysis termed "economic reality", stating at p 265, quoting from *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367, 372 (1959):

"This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."

Here, a specific contract existed between Consolidated and Monroe to perform the welding operations required. Defendant would fill Consolidated's manpower requests and dispatch employees to Consolidated. Defendant paid the employees, deducting their withholding tax, and providing them with fringe benefits. Consolidated's engineer in-

structed defendant's foreman, John Sabo, to modify the steam system by cutting out a 500-foot portion of pipe, sealing the open end with a welded steel plate. Sabo determined the type of weld to be used, when the weld was to be done, and the defendant's employee who would perform the work. The above mentioned considerations lead us to agree with the conclusion of the jury that defendant's employees were not borrowed servants under the standards set forth in *Renfroe.* Accordingly, the motion for directed verdict was properly denied.

Defendant urges additional grounds for a directed verdict exist because the jury was instructed with regard to implied warranty of fitness despite the lack of circumstances which would substantiate this charge being given. However, defendant does not differentiate between the sale of goods and the performance of services,[2] nor does it demonstrate the applicability of appropriate statutory language to the instant case. Defendant addresses this issue in terms of its restricted authority and the extensive control exercisable by Consolidated. No argument is presented nor authority cited in support of defendant's position specifically relating to implied warranty. It is well settled that mere statement of a position without argument or citation of authority is insufficient to be considered by an appellate court. *Delta Twp v Eyde,* 40 Mich App 485; 198 NW2d 918 (1972).

Defendant contends the trial court erred in charging the jury that conscious pain and suffering might be considered as an element of damages. Though defendant objected to the court's statement, made out of the jury's presence and prior to

---

[2] *See Perlmutter v Beth David Hospital,* 308 NY 100; 123 NE2d 792 (1954).

their being charged, the record indicates that the defendant did not object at the time of the charge. Failure to specifically object precludes a party from assigning as error the giving of instructions. GCR 1963, 516.2. Further, the three cases cited by defendant[3] each lacked evidence presented to the jury indicating that death or unconsciousness did not occur at the same instant that the accident causing the death occurred. In the instant case, evidence was presented which allowed the jury to find that death occurred at the time plaintiff-decedent struck the floor beneath the catwalk. Recovery for pain and suffering could be allowed for suffering which occurred from the time he was scalded by the steam until the moment he struck the floor below.

The trial court refused to give defendant's requested charge that merely proving that injury would not have occurred had the steam line been designed differently does not necessarily establish a breach of duty as to design. No error was committed in failing to do so. The trial court, drawing from the Michigan Standard Jury Instructions, sufficiently apprised the jury of the proper standards to be used when read in their entirety. *People v Mason Jackson,* 42 Mich App 468; 202 NW2d 463 (1972); *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972).

The instructions given do not materially differ from those requested by the defendant. The jury was advised that their verdict could have favored the defendant notwithstanding their belief that the accident might not have occurred if the steam line had been designed and built differently. The requirement that defendant exercise ordinary care

---

[3] *Baker v Slack,* 319 Mich 703; 30 NW2d 403 (1948); *Covell v Colburn,* 308 Mich 240; 13 NW2d 275 (1944); *Smith v Detroit,* 388 Mich 637; 202 NW2d 300 (1972).

for the safety of the plaintiff's decedent could have been satisfied had the jury concluded that the installation of an additional trap, while appropriate, was not a requirement in the exercise of ordinary care. Where no compelling reason for departing from a standard jury instruction is given, it is not error to refuse to give instructions on the same subject. *Simonetti v Rinshed-Mason Co,* 41 Mich App 446; 200 NW2d 354 (1972); *Vanden Berg v Grand Rapids Gravel Co,* 42 Mich App 722; 202 NW2d 694 (1972).

We find no merit in defendant's allegation that the trial court abused its discretion in taxing as costs against the defendant the entire amount of $2,026.18 representing plaintiff's payment to expert witness John Crankshaw. The itemized expenses incurred, including preparation fees, are not unreasonable under the circumstances and do not violate the provisions of MCLA 600.2164.1; MSA 27A.2164(1).

Finally, defense counsel objected to the closing rebuttal argument made by plaintiff's counsel in which an attempt was made to persuade the jury that Consolidated's engineer did not possess sufficient expertise to design, construct, or alter steam systems. It was his theory that considerable reliance was placed upon defendant for this knowledge. A review of the record indicates that the statements made by plaintiff's counsel were made in response to one of the basic thrusts of defendant's closing argument placing responsibility for the safety of the steam system upon the engineers of Consolidated rather than defendant. It is well established that statements made by counsel in his closing argument may not be error if given in response to arguments made by opposing counsel. *Agee v Williams,* 17 Mich App 417; 169 NW2d 676

(1969); *Mason v Lovins,* 24 Mich App 101; 180 NW2d 73 (1970). Further, assuming *arguendo* that the remarks of plaintiff's counsel were not justifiable, any error which existed was cured by the instructions given by the court immediately following defense counsel's objection. *People v John Martin,* 37 Mich App 621; 194 NW2d 909 (1972). The trial court instructed the jury as follows:

"Members of the jury, of course, you will decide the case on evidence you have heard on the witness stand, sworn evidence and not statements of counsel one way or the other. Counsel's statements are intended to assist you, and they may certainly use illustrations and the like in graphic descriptions, even though they were not in the evidence, as methods of argument; but only evidence may be considered by the jury.

"Is that sufficient ruling on the objection? Are both sides satisfied with it or not?"

Both counsel indicated they were satisfied with the court's instruction.

Review of the issues presented does not warrant a decision contrary to that of the trial judge.

Affirmed. Costs to appellee.

All concurred.