HARBENSKI v UPPER PENINSULA POWER COMPANY

Docket Nos. 57878, 57882, 61332. Submitted May 4, 1982, at Sault
Ste. Marie.—Decided July 21, 1982. Leave to appeal applied for.

Norma J. Harbenski, administratrix of the estate of Douglas J.
Harbenski, deceased, brought an action for wrongful death
against Upper Peninsula Power Company, Upper Peninsula
Generating Company, Cleveland-Cliffs Iron Company, and Cliffs
Electric Service Company, all owners of the Presque Isle Power
Plant, and Bechtel Power Corporation in the Marquette Circuit
Court. Plaintiff's decedent died in a fall while working in the
employ of Riley Stoker Corporation at the Presque Isle Power
Plant. Bechtel Power and Upper Peninsula Power brought
third-party complaints against Riley Stoker Corporation based
on contractual indemnity. The jury found the plant owners not
negligent, Bechtel Power 30% negligent, Riley Stoker 55%
negligent, and decedent 15% negligent. The court granted
judgment on the verdict after deducting 15%, John E. Mc-
Donald, J. Bechtel Power appealed. Riley Stoker appealed.

Bechtel claimed it was entitled to indemnification from Riley
Stoker for the entire amount of the award and the owners
claimed that they were entitled to an award under the indem-
nity agreement for costs and attorney fees incurred in defend-
ing the principal action. The court granted summary judgment

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 649.
[2] 22 Am Jur 2d, Death § 164.
  29 Am Jur 2d, Evidence § 889.
  Remarriage tables. 25 ALR2d 1464.
[3] 75 Am Jur 2d, Trial § 211.
[4] 81 Am Jur 2d, Witnesses § 609.
[5] 57 Am Jur 2d, Negligence § 426.
  New Topic Service, Comparative Negligence § 1.
[6] 17 Am Jur 2d, Contracts § 244.
[7] 17 Am Jur 2d, Contracts § 180.
  41 Am Jur 2d, Indemnity §§ 9, 10, 15 et seq.
[8] 41 Am Jur 2d, Indemnity § 36.
[9] 82 Am Jur 2d, Workmen's Compensation § 430.

on both claims and Riley Stoker appealed. The appeals were consolidated. *Held:*

1. The court properly excluded evidence that plaintiff was receiving workers' compensation benefits.

2. Evidence of a plaintiff's remarriage, or the probability or possibility of remarriage, is irrelevant to mitigate damages of the plaintiff surviving spouse in an action for the decedent spouse's wrongful death.

3. Statements made by counsel in his closing argument may not be the cause of error if given in response to arguments made by opposing counsel.

4. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

5. The doctrine of joint and several liability has not been abolished by the adoption of the comparative negligence doctrine.

6. A provision in a contract which guarantees indemnification for the sole negligence of the indemnitee is void as against public policy. However, a provision which seeks to indemnify a promisee against liability for its own negligence is valid in the case of concurrent negligence by multiple tortfeasors. The contract provided for indemnification of Bechtel for "any and all suits" which Bechtel "contributed to in whole or in part". The language alone is insufficient to conclude that the intention of the provision was to indemnify for Bechtel's own sole negligence. The indemnity agreement was valid as to Bechtel.

7. Costs and attorney fees incurred by an indemnitee in defense of the principal action may be recovered by the indemnitee from the indemnitor. However, the costs and attorney fees incurred in the prosecution of the indemnity action by the indemnitee against the indemnitor may not be recovered. The costs and attorney fees associated with the defense of the principal action by the indemnitee may be recovered even where both the principal action and the indemnity action are tried together. In such a case the court must apportion the costs and fees incurred.

8. The exclusive remedy provision of the Worker's Disability Compensation Act is not violated by an employer's being joined in a tort action by an employee where the employer is joined as a third-party defendant on an indemnity theory.

Affirmed but remanded for an apportionment of costs and attorney fees.

1. NEGLIGENCE — EVIDENCE — WORKERS' COMPENSATION.

Evidence concerning receipt of workers' compensation payments by an injured workman and his dependents should not be admitted in the trial of a negligence case against a third-party defendant.

2. DEATH — WRONGFUL DEATH — EVIDENCE — REMARRIAGE.

Evidence of a plaintiff's remarriage, or the probability or possibility of remarriage, is irrelevant to mitigate damages of the plaintiff surviving spouse in an action for the decedent spouse's wrongful death.

3. TRIAL — ARGUMENT OF COUNSEL — APPEAL.

Statements made by counsel in his closing argument may not be the cause of error if given in response to arguments made by opposing counsel.

4. EVIDENCE — PRIOR INCONSISTENT STATEMENTS — RULES OF EVIDENCE.

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require (MRE 613[b]).

5. NEGLIGENCE — JOINT AND SEVERAL LIABILITY — COMPARATIVE NEGLIGENCE.

The doctrine of joint and several liability has not been abolished by the adoption of the comparative negligence doctrine.

6. CONTRACTS — JUDICIAL CONSTRUCTION — INDEMNITY.

The general rule in the interpretation of all contracts, including indemnity contracts, is to ascertain the intention of the parties.

7. INDEMNITY — NEGLIGENCE — PUBLIC POLICY.

A provision in a contract which guarantees indemnification for the sole negligence of the indemnitee is void as against public policy; however, a provision which seeks to indemnify a promisee against liability for its own negligence is valid in the case of concurrent negligence by multiple tortfeasors (MCL 691.991; MSA 26.1146[1]).

8. INDEMNITY — COSTS — ATTORNEY FEES.

Costs and attorney fees incurred by an indemnitee in defense of the principal action may be recovered by the indemnitee from the indemnitor, however, the costs and attorney fees incurred in the prosecution of the indemnity action by the indemnitee

against the indemnitor may not be recovered; the costs and attorney fees associated with the defense of the principal action by the indemnitee may be recovered even where both the principal action and the indemnity action are tried together.

9. INDEMNITY — WORKERS' COMPENSATION — EXCLUSIVE REMEDY.

The exclusive remedy provision of the Worker's Disability Compensation Act is not violated by an employer's being joined in a tort action brought by an employee where the employer is joined as a third-party defendant on an indemnity theory.

*Hansley, Neiman, Peterson, Beauchamp, Stupak & Bergman, P.C.,* for Norma J. Harbenski.

*Clancy, Hansen, Chilman, Graybill & Greenlee, P.C.,* for Upper Peninsula Power Company, Upper Peninsula Generating Company, Cleveland-Cliffs Iron Company, and Cliffs Electric Service Company.

*Law Offices of Jack Carpenter,* for Riley Stoker Corporation.

*Weis, Cossi, Geissler & Dean, P.C.,* for Bechtel Power Corporation.

Before: R. B. BURNS, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

R. B. BURNS, P.J. This appeal stems from a wrongful death action where plaintiff's decedent was killed in a construction accident. The accident occurred at the Presque Isle Power Plant while decedent was working as a boilermaker for third-party defendant—subcontractor Riley Stoker Corporation. Plaintiff brought a suit against the owners of the plant[1] and against the general contractor, Bechtel Power Corporation. Bechtel Power

---

[1] The owners involved in this action are Upper Peninsula Power Company, Upper Peninsula Generating Company, Cleveland-Cliffs Iron Company, Cliffs Electric Service Company.

Corporation, as a third-party plaintiff, sued Riley Stoker Corporation based on the theory of contractual indemnity. The jury found the owners not liable, Bechtel Power 30% negligent, Riley Stoker 55% negligent, and plaintiff's decedent 15% negligent. The total award was for $866,000 against Bechtel Power, after subtracting the percentage of negligence attributable to plaintiff's decedent. Bechtel Power and Riley Stoker appeal.

The obligations set forth in an indemnity clause of the parties' contract were hotly disputed. However, to avoid confusion, this third-party contractual indemnity claim was not submitted to the jury. After the verdict was rendered motions for summary judgment on the claim were presented. Bechtel claimed it was entitled to indemnification from Riley Stoker for the entire amount of the award. The owners claimed that pursuant to the indemnification agreement they were entitled to an award for the costs and attorney fees they incurred in defending the principal action. Both summary judgments were granted and Riley Stoker appeals.

The first issue presented is whether the trial court erroneously excluded evidence that plaintiff was receiving workers' compensation benefits. Riley Stoker, the decedent's employer, argues that it was denied a fair trial because the exclusion of the information contributed to the excessive verdict. The plaintiff maintains that the evidence was properly excluded. In the plaintiff's estimation, the determination of damages would not be fair and adequate if the judge had ruled otherwise.

In *Hill v Harbor Steel & Supply Corp,* 374 Mich 194, 214; 132 NW2d 54 (1965), the Court stated:

"Decisions made in this Court subsequent to the trial

below control our ruling on this point. The case was tried in April, 1962, before our decisions in *McCullough v Ward Trucking Co,* 368 Mich 108, and *Leitelt Iron Works v DeVries,* 369 Mich 47. In the course of those two decisions, a majority of the Court as presently constituted ultimately held that evidence concerning receipt of workmen's compensation payments by an injured workman and his dependents should not be admitted in the trial of a negligence case against a third-party defendant."

More recently, the Supreme Court reaffirmed its continued adherence to *Hill* in *Lynch v Sign of the Beefeater,* 407 Mich 866; 283 Mich 632 (1980).

The trial below was an action for negligence against a third-party defendant. Therefore, we find that *Hill* and *Lynch* control the resolution of this issue. The trial judge properly excluded reference to any remuneration plaintiff was entitled to from workers' compensation.

In the period between decedent's death and the commencement of trial, plaintiff remarried. Instead of "Harbenski", her last name became "Saez". The essence of the next issue raised by defendant Bechtel and third-party defendant Riley Stoker is that plaintiff misrepresented her marital status; namely, she tried to conceal the fact that she had remarried.

The position of defendants is obliterated by the conduct of the parties at trial. If the defendants' counselors were disturbed by how plaintiff was addressed at trial the record fails to reveal their displeasure. Counsel for Bechtel at times referred to plaintiff by her previous name, Mrs. Harbenski. However, when plaintiff testified she identified herself by her current name, Norma Saez.

In *Wood v Detroit Edison Co,* 409 Mich 279, 287-

288; 294 NW2d 571 (1980), the Supreme Court held that in a wrongful death action,

"Evidence of the possibility of remarriage is held not admissible for the purpose of mitigating damages * * *.

"In accordance with such reasoning, while we continue to believe that the fact of remarriage is irrelevant to mitigate damages in a wrongful death action, we feel that a protective order which enables a plaintiff to be addressed by a name other than that which she is currently using is not proper. We agree with the following reasoning of the Supreme Court of New Jersey:

" 'It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury'. *Dubil v Labate,* 52 NJ 255, 261-262; 245 A2d 177, 180 (1968)." (Footnote omitted.)

Therefore, even if plaintiff had tried to conceal her true marital status, we would be bound to reject this claim of error.

Defendant takes exception to a comment made by plaintiff's counsel during closing argument. During closing argument plaintiff's counsel told the jury that plaintiff was precluded from suing Riley Stoker directly. He elaborated that the "conspiracy" to attribute all the negligence from plaintiff's accident to Riley Stoker was meritless and instructed the jurors to disregard such claims. The trial court held these remarks constituted "fair comment".

Defendant's position is that the presentation was outrageous and prejudicial and thereby constituted

reversible error. Plaintiff counters that the argument was proper since Riley Stoker, during its closing statement, argued that the jury should absolve Bechtel and the owners of responsibility for the accident. This position, plaintiff states, differed from what Riley Stoker asserted in opening argument, where it was urged that the responsibility for plaintiff's injuries was placed with Bechtel, not Riley Stoker. Therefore, the comments made were in rebuttal to the new posture pursued by Riley Stoker during closing argument.

Riley Stoker's counsel, in part, stated in the opening argument:

"So I am not saying that Bechtel or U. P. Generating violated any duty they had to Mr. Harbenski. But if they did * * * if they did, it was their own personal, independent duty that they might have to Mr. Harbenski: * * * You're the judge and you are larger than one mind. If they violated their own personal fault, that contract does not say that Riley has to pay for their own personal fault."

In closing argument Riley Stoker stated:

"They are being criticized because they tried to enforce or help safety and encourage safety and now they find themselves in court * * * for something that is our business—Riley Stoker's business. And that's what I meant in my opening statement, if you found that they did anything wrong it was their own responsibility for whatever they did wrong. But don't hold them responsible for what Riley Stoker does * * * if we did something wrong."

When plaintiff's counsel presented his closing remarks he offered the following retort to the statements made by Mr. Carpenter, Riley Stoker's counsel:

"I think, listening to Mr. Carpenter's statement as my final remarks here, that we have really come full circle with Mr. Carpenter. It's almost like a conspiracy. He starts out by saying that Bechtel's at fault, not Riley Stoker. Harbenski is at fault, not Riley Stoker. But now it seems that defendants have more or less ganged up, they say Riley Stoker will take it, 'We're the employer,' because the plaintiff can't get one penny if you find Riley Stoker the only one at fault. Ladies and gentlemen, you put the blame where it belongs."

Riley Stoker and Bechtel did not object to plaintiff's comment at trial. Therefore, this issue is not preserved on appeal, unless manifest injustice will result.

Where no attempt is made to extend or introduce a new argument, statements which supplement opening and closing remarks are allowed. See *Haynes v Monroe Plumbing & Heating Co,* 48 Mich App 707; 211 NW2d 88 (1973). Moreover, counsel is allowed to make statements during closing arguments in response to points made by opposing counsel. *Haynes, supra; Carbonell v Bluhm,* 114 Mich App 216; 318 NW2d 659 (1982). Therefore, we find plaintiff's counsel's comments were properly presented to the jury. It was the remarks of third-party defendant Riley Stoker which paved the path for the closing comment made by plaintiff's counsel.

The next issue raised is whether the trial court erroneously prevented the impeachment of plaintiff's witness by extrinsic evidence of a prior inconsistent statement.

It was contested at trial that safety regulations required that the uncovered hole have a barricade around it. The MIOSHA inspector who had investigated the accident testified at trial. Alonzo Sanford, the general foreman at the site of the acci-

dent, also testified at trial. The credibility of the MIOSHA inspector was pivotal to an accurate assessment of Bechtel's and Riley Stoker's liability. At one point the trial court disallowed testimony by Sanford that allegedly would have disclosed a prior inconsistent statement made by the MIOSHA inspector, namely, that the inspector had stated to Sanford that Riley Stoker employees could perform the work without a barrier.

Defendant Bechtel argues that the trial court erroneously excluded the disclosure of the inspector's prior inconsistent statement. Plaintiff asserts that defendant's position is untenable, since the inspector was not questioned on the issue now claimed to be an inconsistent statement.

When the inspector testified he was asked a compound question that included an inquiry into a statement he made to Riley Stoker personnel about the absence of the barricade. However, he was never asked whether he had conversed with Sanford with respect to the necessity for a barricade. During the examination of Sanford, defense counsel for Riley Stoker tried to elicit what exactly the inspector had said to Sanford about the necessity for a barricade. The trial court refused to permit the questioning because the testimony was hearsay.

Defendant Bechtel claims that the statement was admissible into evidence as a prior inconsistent statement. However, MRE 613(b) provides:

"Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to

admissions of party-opponent as defined in Rule 801(d)(2)."

No foundation was laid. Therefore, MRE 613(b), which permits impeachment by prior inconsistent statements, is inapplicable. See *Ghezzi v Holly,* 22 Mich App 157; 177 NW2d 247 (1970).

Another evidentiary issue is raised on appeal. Apparently, MIOSHA issues a citation when violations of safety procedures are uncovered. During the testimony of the MIOSHA inspector, defendants tried to introduce rebuttal evidence that a citation MIOSHA had issued later was reduced. The trial court disallowed the rebuttal evidence.

A review of the record reveals that the inspector never was questioned regarding any citation he may have issued. Riley Stoker did at one point question the inspector about a "file" the Department of Labor maintained, however, this line of questioning was discontinued. Moreover, counsel made no offer of proof. No error occurred since no foundation was laid for the proffered testimony. *Fredericks v General Motors Corp,* 411 Mich 712; 311 NW2d 725 (1981).

Defendants Bechtel and Riley Stoker argue that the assessment of damages against Bechtel should be limited to 30%, the negligence the jury attributed to Bechtel. Instead, plaintiff was permitted to recover from Bechtel 85%[2] of the overall assessed damages.

The 85% amount of recovery was based on the theory of joint and several liability. However, defendants argue that along with the adoption of the pure form of comparative negligence in Michigan, the concept of joint and several liability was

[2] The plaintiff's decedent was found to be 15% negligent and, pursuant to the theory of comparative negligence, plaintiff's recovery was reduced by that amount.

abrogated. The issue becomes whether the adoption of comparative negligence abolished joint and several liability and therefore plaintiff's recovery should be limited to the percentage of fault attributed to defendant Bechtel.

This question is not novel. It has confronted this Court several times within the past two years. Consistently, this Court has rejected the position that the adoption of comparative negligence dissolved joint and several liability between concurrent tortfeasors. *Johnston v Billot,* 109 Mich App 578; 311 NW2d 808 (1981). The rationale behind preserving the doctrine of joint and several liability for the negligent common action of joint tortfeasors even when comparative negligence is adopted was set forth in *Caldwell v Cleveland-Cliffs Iron Co,* 111 Mich App 721, 725-726; 315 NW2d 186 (1981), quoting from *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980):

"This argument ignores the fact that the comparative negligence doctrine also seeks to assure fair and adequate compensation for injured plaintiffs. Unlike the concept of contributory negligence, it avoids unduly penalizing a plaintiff for his own fault. While some unfairness exists when one defendant is held liable for the fault of his codefendants, this is equally true of cases where the plaintiff is not at fault. The acts of Albert Feltner were foreseeable by the other defendants, and there is nothing inherently inequitable in holding them liable for the resulting injury. The doctrine of comparative negligence does not mandate abandonment of joint and several liability. In fact, a majority of other jurisdictions considering the issue have retained joint and several liability. See Schwartz, Comparative Negligence, § 16.4, p 93 (Supp, 1978)."

*Cutter v Massey-Ferguson, Inc,* 114 Mich App 28; 318 NW2d 554 (1982); *Weeks v Feltner, supra.*

The next issue on appeal is whether the trial court erred in granting summary judgment to third-party plaintiff Bechtel on the contractual indemnity provision between Bechtel and third-party defendant Riley Stoker, which required Riley Stoker to indemnify Bechtel for Bechtel's own negligence.

Riley Stoker claims that the indemnity provision was unclear and insufficient to require Riley Stoker to indemnify Bechtel for Bechtel's own negligence. The argument is that the terms of the provision do not require Riley Stoker to indemnify Bechtel where the *injury* was caused in part by Riley Stoker, but only where Bechtel's *liability* has been caused by Riley Stoker's conduct.

Bechtel counters that the language in the indemnity clause of the contract covers every situation except where Bechtel or the owner were solely negligent or guilty of willful misconduct. It specifically covers the situation where Bechtel and Riley Stoker are concurrently negligent.

The language of the indemnity provision provides:

"15. INDEMNITY AND RELEASE: The contractor shall indemnify, defend and save harmless and release the OWNER and BECHTEL and their officers, employees, representatives and related entities and each of them, from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs, and expenses of whatsoever kind or nature whether arising before or after final acceptance and in any manner directly or indirectly caused, occasioned or contributed to in whole or in part, or claimed to be caused, occasioned or contributed to in whole or in part, by reason of any act, omission, fault or negligence whether active or passive of the Contractor or of anyone acting under its direction * * * The Contractor's aforesaid indemnity, hold-

harmless and release agreement shall not be applicable to any liability caused by the sole negligence or willful misconduct of the OWNER, or of BECHTEL."

Before turning to the clause at hand, several well-established rules of construction must be recognized. Generally, contracts of indemnity are interpreted to effectuate the intentions of the parties. *Meadows v Depco Equipment Co,* 4 Mich App 370; 144 NW2d 844 (1966). A provision which guarantees indemnification for the sole negligence of the indemnitee is void as against public policy, MCL 691.991; MSA 26.1146(1). However, a provision which seeks to indemnify a promisee against liability for its own negligence is valid in the case of concurrent negligence by multiple tortfeasors. *Hayes v General Motors Corp,* 106 Mich App 188; 308 NW2d 452 (1981).

Here the contract provision is not void as against public policy. It does not extend coverage to the situation where the injury is due to Bechtel's sole negligence. Thus we turn to whether, as a matter of law, language in the contract reveals an intention by Riley Stoker to indemnify Bechtel for negligent actions.

The provision in this case expressly states that Bechtel shall be indemnified against "any and all suits" which Bechtel "contributed to in whole or in part". In several cases these exact phrases have been interpreted as indicative of the parties' intention that the indemnitees be indemnified for their own negligence. *Paquin v Harnischfeger,* 113 Mich App 43; 317 NW2d 279 (1982); *Pritts v J I Case Co,* 108 Mich App 22; 310 NW2d 261 (1981); *Hayes v General Motors Corp, supra.*

In the past, such language has been found to be insufficient, as a matter of law, to conclude that the provision was intended to indemnify the in-

demnitee against its own sole negligence. *Peeples v Detroit,* 99 Mich App 285; 297 NW2d 839 (1980); *Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318; 253 NW2d 748 (1977); *Darin & Armstrong v Ben Agree Co,* 88 Mich App 128; 276 NW2d 869 (1979). However, in those cases the courts did not find a clear intention when looking to the surrounding circumstances.

Here, Riley Stoker failed to adduce any evidence of a conflict in intent in the meaning of the provision's terms. Moreover, the lower court was not directed to any confusing and divergent surrounding circumstances. Riley Stoker cannot rely on the surrounding circumstances doctrine absent a presentation of circumstances which do indeed call the interpretation of otherwise unambiguous language into question. *Fireman's Fund American Ins Cos v General Electric Co, supra.*

The contention that the intent to indemnify an indemnitee against his own negligence must be expressly stated has been rejected. In *Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975), the Supreme Court stated:

"Although not 'expressly' stated in the agreement, we are persuaded from our reading of that agreement, in light of surrounding circumstances, that the parties intended that Consumers Power be indemnified against liability for its own neglience of the type precipitating this litigation."

We are persudaded that no material issue of the parties' intent to indemnify Bechtel against liability for its own negligence exists. Riley Stoker only points to the language of the contract to support its position. Riley Stoker has failed to demonstrate any surrounding circumstances rendering this lan-

guage ambiguous. *Hayes v General Motors Corp, supra.*

Riley Stoker contends that the summary judgment in favor of the owners to collect attorney fees from Riley Stoker was erroneous since the indemnity agreement was too broad to support such an award.

In their motion for summary judgment the owners prayed for costs and attorney fees incurred in the defense of the principal action. *Warren v McLouth Steel Corp,* 111 Mich App 496, 508-509; 314 NW2d 666 (1981), discussed this issue:

"In *State Farm v Allen, supra* [50 Mich 71; 212 NW2d 821 (1973)], 78-79, this Court cited approvingly the following quotation from McCormick, Damages, § 55, p 246:

" 'For the expense incurred in the *present* litigation, we have found that our law generally gives the successful party no recompense beyond the taxable costs which ordinarily include only a portion of his expense. This is the case, however wrongful the suit or groundless the defense. On the other hand, *where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute previous legal proceedings, the law reverses its restrictive attitude* and allows the plaintiff to recover all the expense, including counsel fees, reasonably incurred by him in the prior litigation.' (Emphasis added.)

\* \* \*

"There are, however, limitations to the right to recover incurred expenses, including attorneys' fees. At first blush, *State Farm* seems to imply that this right hinges upon the technical distinction between 'prior' litigation and 'present' litigation. However, it is apparent that the real thrust of the holding is that reasonable expenses incurred in the primary litigation created by the wrongful acts of another may be recoverable but the expenses incurred in litigation with the actual wrongful party are not recoverable. The underlying

distinction in *State Farm* is satisfied when it is recognized that McLouth legally is both a defendant and third-party plaintiff in the instant action. The rationale of *State Farm* should not be ignored, or McLouth penalized, merely because it impleaded Valley into the same action rather than proceeding in a separate subsequent suit. In short, McLouth is entitled to recover its expense in defending against Warren's claim but not entitled to recover any expenses incurred as a third-party plaintiff against the third-party defendant. See *Hayes v General Motors Corp,* 106 Mich App 188, 200-201; 308 NW2d 452 (1981)."

Accord, *Hayes v General Motors Corp, supra,* 201. *Warren* remanded the award of attorney fees for apportionment between those incurred in defending the principal and the third-party claim.

The award of the trial court did not apportion the attorney fees. Therefore, pursuant to *Warren,* Riley Stoker is entitled to a remand for an apportionment of the fees.

The last issue on appeal is whether the allowance of indemnification by Riley Stoker is akin to contribution and therefore violative of the exclusive remedy clause of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131). Riley Stoker was obligated to pay workers' compensation benefits on behalf of the plaintiff. Now, Riley Stoker argues that the exclusive remedy provision of the Worker's Disability Compensation Act precludes indemnification here because it is akin to contribution, which is forbidden by the statute. Defendant Bechtel claims that Riley Stoker's reliance on the Worker's Disability Compensation Act does not bar a third-party plaintiff action by Bechtel against Riley Stoker.

In *Darin & Armstrong v Ben Agree Co, supra,* this Court stated that an indemnification agreement was akin to contribution. Therefore, any

collection under the indemnification agreement was forbidden by the exclusive remedy provision of the Worker's Disability Compensation Act. However, the great weight of authority has repudiated the rationale of *Darin. Paquin v Harnischfeger, supra.* It is now clear that the exlusive remedy provision of the Worker's Disability Compensation Act is not disturbed when an employer is joined as a third-party defendant on an indemnity theory. *Nanasi v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974); *Paquin v Harnischfeger, supra.* See, also, *Dale v Whiteman,* 388 Mich 698; 202 NW2d 797 (1972).

Affirmed but remanded for an apportionment of costs and attorney fees.